490 S.E.2d 812

**STATE of West Virginia ex rel. Darrell V. McGRAW, Jr., Petitioner,**

v.

**The WEST VIRGINIA ETHICS COMMISSION and Robert Gould, Respondents.**

**No. 24023.**

Supreme Court of Appeals of West Virginia.

Submitted June 25, 1997.

Decided July 16, 1997.

Rudolph L. DiTrapano, D.L. Hamilton, DiTrapano and Jackson, Charleston, Rebecca A. Baitty, Sarasota, FL, for Petitioner.

Robert J. Lamont, Charleston, for Respondent W.Va. Ethics Commission.

Robert H. Davis, Jr., Harrisburg, PA, for Respondent Robert Gould.

STARCHER, Justice:

In this case we are asked to examine the sufficiency of a complaint filed with the respondent West Virginia Ethics Commission ("Commission") pursuant to the West Virginia Governmental Ethics Act, *W.Va.Code*, 6B–1–1 to 6B–3–10 ("Act"). The petitioner, our State's Attorney General, Darrell V. McGraw, Jr., argues that the allegations contained in a complaint filed with the Commission against him are insufficient to constitute a violation of the Act, and that under the Act the Commission has a mandatory duty to dismiss a complaint if the allegations are insufficient. The petitioner asks that we issue a writ of mandamus or prohibition to compel the Commission to dismiss the complaint.

After carefully considering the petitioner's arguments, we conclude that the determination of whether a complaint filed with the Commission sufficiently states a violation of the Act lies within the discretion of the Commission and its investigative panel. Accordingly, we deny the requested writ of mandamus or prohibition.

## I.

### *Facts and Background*

The petitioner in this case, Darrell V. McGraw, Jr., is currently the Attorney Gen-

eral for the State of West Virginia, and has been the Attorney General since January 1993. In October 1996, the petitioner was the Democratic candidate for reelection to the Attorney General's office. During the campaign, Benjamin Suarez, an individual who has been the subject of several lawsuits by or against the Attorney General, hired respondent Robert Gould as a political consultant to organize an independent advertising campaign against the petitioner.[1]

The record indicates that respondent Gould contracted with television station WTRF–TV7 to run two videotaped advertisements, personally paid for by Suarez. On October 28, 1996, the Attorney General faxed a letter, written on Office of the Attorney General stationery (the "informational letter"), to WTRF–TV7 addressed to "Station Manager" informing the station that the Attorney General had sued several of Suarez's mail order companies under the West Virginia Consumer Credit and Protection Act because he was "concerned that Suarez was using deceptive and misleading methods to sell products."

The informational letter quotes extensively from this Court's opinion in *State, By and Through McGraw v. Imperial Marketing, supra,* note 1, including our conclusions that Suarez's company "has made fear and confusion the catalyst to assure a completed sale of whatever product is being peddled" and that Suarez's practice of offering a prize or

gift to customers "was an illusion and nothing more than an elaborate ruse to sell" his products. The Attorney General's letter also states that this Court affirmed the injunction issued by a state circuit court against such deceptive advertising practices. The Attorney General wrote that he is

... concerned that Suarez [Corporation Industries] is effectively continuing its deceptive and misleading practices via advertisements distributed on its behalf by Suarez ... I understand that a Suarez subsidiary is currently under investigation by the federal government for election law fraud and violations in Texas.

I respectfully request that you consider this background when deciding whether to air or publish any patently misleading or scandalous advertising from Suarez. Of course, I would not presume to influence your discretion or tell you not to run these ads. I want you to make an informed, conscionable decision. I also request that you review the enclosed Consumer Newsletter.

You may want your legal counsel to review this issue so as to protect your viewing community from this "ruse."

The same day that the informational letter was faxed, WTRF–TV7 allegedly notified respondent Gould that it would not run the campaign advertisements paid for by Suarez.[2]

1. The details of the prosecution by the Attorney General against Suarez may be found in *State, By and Through McGraw v. Imperial Marketing,* 196 W.Va. 346, 472 S.E.2d 792 (1996) *cert. denied sub nom., Suarez Corp. Industries v. West Virginia By and Through McGraw,* —— U.S. ——, 117 S.Ct. 391, 136 L.Ed.2d 307 (1996) (wherein we affirmed a circuit court's enjoining of Suarez's mail order companies from engaging in deceptive business practices in West Virginia after committing multiple violations of the West Virginia Consumer Credit and Protection Act, *W.Va. Code,* 46A–6–104 [1974] and the West Virginia Prizes and Gifts Act, *W.Va.Code,* 46A–6D–1 to – 10 [1992]).

Subsequent to that prosecution, Suarez initiated at least four lawsuits in federal court against the Attorney General and his staff essentially alleging that the Attorney General, by prosecuting Suarez, had infringed on his First Amendment rights.

2. The Attorney General has attached to his reply brief copies of several affidavits from managers of WTRF–TV7 and other television and radio stations solicited by Gould to play the Suarez political advertisements. Each station manager generally stated that they refused to run the advertisements on the basis of station policies to refuse to run political advertising sponsored by non-candidates. Each station manager indicated either that they had never seen the Attorney General's October 28, 1996 letter, or that the letter played no part in their decision to refuse to run the advertising.

Jim Roberts, the national sales manager for WTRF–TV7, states in his affidavit that:

With regard to political advertising on WTRF–TV7, this station implemented a policy not to accept any non-candidate advertising. Thereafter, we cancelled [sic] all pending third-party advertising and no longer accepted any more....

This station was contacted [by] Robert Gould ... on behalf of Benjamin D. Suarez, seeking

On December 11, 1996, respondent Gould filed a verified complaint with the respondent West Virginia Ethics Commission ("Commission"). Count One of the complaint alleges that the petitioner

... knowingly and intentionally used his office and the prestige of his office for his own private gain on October 26, 1996, [sic] when he issued a communication on the Attorney General's stationery, faxed from the Attorney General's office and signed by the Respondent, expressly acting in his capacity as Attorney General, at a time when he was himself a candidate for re-election to the office of Attorney General, which in fact resulted in personal gain beyond the lawful emoluments of his position, and benefited his narrow political interests at the expense of the public at large and in so doing did undermine public confidence in the integrity of a democratic government.

Count Two of the complaint alleges that the petitioner engaged in misconduct by writing a "Dear Friend" letter to various individuals notifying them that Suarez was engaging in independent election expenditures on behalf of organized gambling against sixty-five Democratic candidates for the Legislature. Count Three of the complaint does not contain a specific allegation, but merely recites that the Attorney General was once cited by this Court for transgressing the Rules of Professional Responsibility, and speculates that he should be sanctioned as a "repeat offender."

On January 13, 1997, the Commission issued a Notice of Investigation ("Notice") to the petitioner stating that a complaint had been filed alleging that the petitioner had "intentionally and knowingly used [his] position as the State Attorney General for private gain.... The Investigative Panel assigned to evaluate the complaint has determined that the allegation pertaining to Count One, would, if taken as true, constitute a violation of the Ethics Act." The Notice does not mention Counts Two and Three, but the parties appear to agree that the Commission has found that the charges were not substantiated and were therefore dismissed.

On March 14, 1997 the Attorney General petitioned this Court for a writ of mandamus or prohibition to stop the Commission's investigation. A rule to show cause was issued on March 27, 1997.

## II.

### Discussion

The petitioner argues that the Governmental Ethics Act imposes a non-discretionary duty upon the West Virginia Ethics Commission to dismiss any complaint when it is clear that the complaint fails to state a violation of the Act. The petitioner further asserts that the Gould complaint, even if taken as true, does not state a violation of the Act; accordingly, the petitioner asks that we order the Commission to dismiss the complaint.[3]

The Commission is a twelve-member panel created by law to enforce the Act. *See W.Va. Code*, 6B–2–1 [1994]. The Act establishes administrative, civil and criminal penalties for state government employees and officials who "exercise the powers of their office or

---

to buy air time for anti-Darrell V. McGraw for Attorney General campaign ads. While we initially cashed a check for the buy, the money was refunded since the proposed advertising was non-candidate, third-party political advertising....

I do not recall seeing a letter from Mr. McGraw or from the Office of the Attorney General, so it had no effect on decisions made with respect to the anti-McGraw advertising sought to be aired by Mr. Suarez....

No representatives of [Gould] ... or Benjamin D. Suarez, to my knowledge, made inquiries with this station regarding the reason for not airing anti-McGraw advertising. Had they done so, they would have been informed that the decision was based on station policy and was not the result of any communication from the office of the Attorney General of West Virginia.

Although we have not considered these affidavits in reaching our decision, this evidence should be evaluated by the Commission and its investigative panel.

3. The petitioner also argues that the Act fails to provide sufficient and fair notice of the conduct prohibited by the Act. The petitioner contends that the Act is therefore constitutionally deficient, and that we should issue a writ of prohibition against the Commission. We decline to reach this question at this point in the proceedings.

employment for personal gain beyond the lawful emoluments of their position or who seek to benefit narrow economic or political interests at the expense of the public at large...." *W.Va.Code*, 6B–1–2 [1989]. *See generally, W.Va Code*, 6B–2–5 [1995], 6B–2–10 [1995].

When the Commission receives a verified complaint filed by any person, the Commission must establish an investigative panel "to investigate the substance of the allegations in the complaint and to determine whether there is probable cause to believe that a violation of this chapter has occurred." *W.Va.Code*, 6B–2–4(a) [1990]. The first task of the investigative panel is to evaluate whether the allegations in the complaint are sufficient to constitute a violation of the Act:

In the case of a filed complaint, the first inquiry of the investigative panel shall be a question as to whether or not the allegations of the complaint, if taken as true, would constitute a violation of law upon which the commission could properly act under the provisions of this chapter. *If the complaint is determined by a majority vote of the investigative panel to be insufficient in this regard, the investigative panel shall dismiss the complaint.*

*W.Va.Code*, 6B–2–4(b) [1990] [emphasis added]. If a majority of the members of the investigative panel believe the allegations in the complaint are sufficient to support a violation of the Act, then the next step for the investigative panel is to conduct an investigation of the charges to determine whether probable cause exists to believe that improper conduct has occurred. *W.Va.Code*, 6B–2–4(d) [1990]. In the present case, the investigative panel has not yet conducted this next step in the process, that is, has not considered whether or not there is probable cause to believe a violation of the Act has occurred.[4]

The petitioner's main argument is that under *W.Va.Code*, 6B–2–4(b) [1990], if the Gould complaint fails to allege a sufficient violation of the Governmental Ethics Act, then the Commission is required to dismiss the complaint. We disagree for the following reasons.

■ In considering any statute, this Court must read the statute as a whole. *Woodring v. Whyte*, 161 W.Va. 262, 267, 242 S.E.2d 238, 242 (1978); *Wooddell v. Dailey*, 160 W.Va. 65, 68–69, 230 S.E.2d 466, 469 (1976). Every part of a statute must be construed in connection with the whole, so as to make all parts harmonize if possible. *Bullman v. D & R Lumber Co.*, 195 W.Va. 129, 133, 464 S.E.2d 771, 775 (1995). Our customary approach in interpreting a statute is to give effect to each of its parts, and to the statute as a whole so as to accomplish the general purpose of the legislation. *Rose v. Oneida Coal Co., Inc.*, 195 W.Va. 726, 731, 466 S.E.2d 794, 799 (1995); Syllabus Point 2, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

The primary object in construing a statute is to ascertain and give effect to the intent of the legislature by examining the statute in its entirety, without selecting any single part, provision, section, sentence, phrase or word. Syllabus Point 2, *Mills v. Van Kirk*, 192 W.Va. 695, 453 S.E.2d 678 (1994); Syllabus Point 1, *Parkins v. Londeree*, 146 W.Va. 1051, 124 S.E.2d 471 (1962).

■ At first blush, *W.Va.Code*, 6B–2–4(b) [1990] would appear to indicate a mandatory duty on the part of the investigative panel to dismiss an insufficient complaint. However, reading the statute in its entirety, we find that this clause is based upon a condition precedent, namely a finding by the investigative panel as to whether or not the allega-

---

**4.** At the probable cause level, the investigative panel must consider "(1) the allegations raised in the complaint, (2) any timely received written response of the respondent, and (3) any other competent evidence gathered by or submitted to the commission which has a proper bearing on the issue of probable cause." *W.Va.Code*, 6B–2–4(d) [1990]. If the investigative panel makes a finding that probable cause exists to believe that a violation of the Act has occurred, then the

matter is assigned to the Commission or a hearing examiner to hold hearings to determine the truth or falsity of the charges; otherwise, the proceedings must be dismissed. *W.Va.Code*, 6B–2–4(f) [1990]. The truth or falsity of the charges and a decision to impose sanctions must be approved by at least six members of the Commission who have not served as members of the investigative panel. *W.Va.Code*, 6B–2–4(m) [1990].

tions in the complaint, if taken as true, would constitute a violation of the Act. Therefore, the duty to dismiss a complaint is first based upon a discretionary finding of the Commission's investigative panel that the complaint is insufficient.

 We stated in *State ex rel. Billings v. City of Point Pleasant*, 194 W.Va. 301, 303, 460 S.E.2d 436, 438 (1995) that the traditional use of mandamus has been "to confine an administrative agency or inferior court to a lawful exercise of its prescribed jurisdiction or 'to compel it to exercise its authority when it is its duty to do so.' " [citations omitted]. To ensure that writs of mandamus are used only in the most extraordinary of situations, we have established three factors that must be met before relief will be granted. In Syllabus Point 2 of *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969), we stated:

> A writ of mandamus will not issue unless three elements coexist—(1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of respondent to do the thing which petitioner seeks to compel; and (3) the absence of another adequate remedy.

*Accord*, Syllabus Point 5, *Phillip Leon M. v. Greenbrier County Board of Education*, 199 W.Va. 400, 484 S.E.2d 909 (1996), *modified in part, Cathe A. v. Doddridge County Bd. of Educ.*, 200 W.Va. 521, 490 S.E.2d 340 (1997); Syllabus Point 2, *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996); Syllabus Point 1, *Hickman v. Epstein*, 192 W.Va. 42, 450 S.E.2d 406 (1994).

 In this case we find that the determination of whether a complaint filed with the Commission sufficiently states a violation of the Act lies within the discretion of the Commission and its investigative panel. Accordingly, because there is no clear legal duty on the part of the respondent to do the thing which the petitioner seeks to compel, we must deny the requested writ. The Legislature has constructed this system for dealing with complaints concerning the Governmental Ethics Act, and we decline to truncate the system before it has had a chance to reach an equitable result. If the process fails to the satisfaction of any party, the appeal process remains open.

We decline to go further and address the petitioner's contention that the allegations contained in the complaint are insufficient. Mandamus lies only when there is a clear legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; while this Court may hold a different interpretation of the allegations in the Gould complaint, we will not substitute our judgment for that of a government agency charged by the Legislature to consider carefully the allegations.

As discussed *supra* in footnote 3, we also decline at this point in the proceedings to reach the petitioner's argument that the Act fails to clearly define what conduct is proscribed by the Act and, therefore, that the Act is constitutionally deficient. Hence, we deny the requested writ of prohibition.

Accordingly, the writ of mandamus or prohibition sought by the petitioner is denied.

Writ denied.