605 S.E.2d 590

**Edson R. ARNEAULT, Petitioner Below, Appellee**

v.

**Margaret B. ARNEAULT, Respondent Below, Appellant**

No. 31772.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 9, 2004.

Decided Dec. 2, 2004.

Robert P. Fitzsimmons, Esq., Fitzsimmons Law Offices, Wheeling, West Virginia, Daniel J. Guida, Esq., Guida Law Offices, Weirton, West Virginia, Attorneys for Appellee.

Richard F. Neely, Esq., Neely & Hunter, Charleston, West Virginia, Mark A. Swartz, Esq., Swartz & Stump, Charleston, West Virginia, Robyn Ruttenberg, Esq., Attorney at Law, Wheeling, West Virginia, Attorneys for Appellant.

PER CURIAM:

The appellant, Margaret Arneault, wife of appellee, Edson R. Arneault, petitioned the Circuit Court of Hancock County for a writ of mandamus, or in the alternative, a writ of prohibition to require the Family Court of Hancock County to award her one or all of the following: suit money with which to pay her attorneys; temporary support; and an advance on her share of the marital assets so that she could maintain her customary and usual standard of living. On April 8, 2004, the circuit court denied the petition on the basis that the appellant did not present any grounds on which to grant the requested relief. On April 12, 2004, the appellant filed a Petition for Appeal before this Court, and on June 15, 2004, this Court granted the appellant's petition. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court reverses the circuit court's decision and remands the case to the family court with directions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The appellant, Margaret Arneault, has been a full-time housewife and mother for thirty-three years. The appellee, Edson R. Arneault, is the president, chairman, chief executive officer, and largest shareholder of MTR Gaming Group, Inc. (hereinafter "MTR"). MTR is a publicly traded corporation that owns and controls Mountaineer Park, Inc., which operates video lottery terminals pursuant to a license granted by the West Virginia Lottery Commission.

On July 12, 1969, the appellant and the appellee were married and later became parents of two children. On March 22, 2002, the appellee filed a petition for divorce alleging irreconcilable differences. On September 9, 2002, the appellant filed an answer to the petition for divorce admitting that irreconcilable differences had arisen between the par-

ties. On November 22, 2002, the appellant filed a Motion for Temporary Relief seeking, among other things, alimony and suit money. On December 20, 2002, the parties were legally separated.

On April 22, 2003, the Family Court of Hancock County entered an interlocutory order providing that the appellee pay the mortgage and taxes on the house in Michigan that the appellant uses, and to pay the auto lease on the appellant's vehicle. The appellant was also provided $2,000 per month from which she was expected to make substantial life insurance payments and debt repayments. Within the same order, the family court held that such direct cash payments to the appellant were to stop on January 1, 2004. Subsequently, on January 27, 2004, the appellant filed a petition for a writ of prohibition and/or mandamus in the Circuit Court of Hancock County seeking cash payments from the appellant as previously ordered. On March 26, 2004, the circuit court held a hearing and on April 8, 2004, an order was entered denying the relief sought by the appellant's petition.

On April 12, 2004, the appellant filed a Petition for Appeal before this Court with regard to the circuit court's April 8, 2004, denial of her petition. On June 15, 2004, this Court granted the appellant's Petition for Appeal. Meanwhile, on July 22, 2004, the Family Court of Hancock County entered a final order in the aforementioned divorce pending before such court, providing $20,000 per month to the appellant as advancement towards equitable distribution, while reserving a separate hearing on the matter of spousal support for an unspecified date.

The subject of the appeal before this Court is the April 8, 2004, denial of the appellant's petition for a writ of mandamus by the Circuit Court of Hancock County.

## II.

### STANDARD OF REVIEW

The appellant characterizes her pleading as an appeal of the Circuit Court of Hancock County's denial of her "Petition For Writ Of Prohibition And/Or Mandamus." Because the appellant seeks to have this Court enter an order directing the circuit court to require the family court to issue various types of relief, we will treat this as an appeal of a petition for a writ of mandamus seeking to compel Judge Recht to require the family court to act accordingly. Our standard of review for proceedings in mandamus is long established:

A writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). Accord, Syllabus Point 5, *Phillip Leon M. v. Greenbrier County Board of Education*, 199 W.Va. 400, 484 S.E.2d 909 (1996), modified in part, *Cathe A. v. Doddridge County Bd. of Educ.*, 200 W.Va. 521, 490 S.E.2d 340 (1997); Syllabus Point 2, *State ex rel. Blankenship v. Richardson*, 196 W.Va. 726, 474 S.E.2d 906 (1996); Syllabus Point 1, *Hickman v. Epstein*, 192 W.Va. 42, 450 S.E.2d 406 (1994); Syllabus Point 1, *State ex rel. McGraw v. West Virginia Ethics Com'n*, 200 W.Va. 723, 490 S.E.2d 812 (1997). Likewise, we have stated that a *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus. *McComas v. Board of Educ. of Fayette County*, 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996). Thus, with this standards in mind, we consider the parties' arguments.

## III.

### DISCUSSION

As noted above, the appellant appeals the April 8, 2004, denial of her petition for a writ of mandamus by the Circuit Court of Hancock County. In her petition, the appellant asked the circuit court to require the Family Court of Hancock County to award her one or all of the following: suit money with which to pay her lawyers; temporary support; and an advance on her share of the marital assets so that she could maintain her customary and usual standard of living.

In this appeal, the appellant maintains that W.Va.Code § 48–1–305(b) and W.Va.Code § 48–5–504(a) and (b) allow a family court to award suit money, and that it was a "shocking abuse of discretion" for the family court not to have awarded suit money or, at least, to have awarded her an advance on her share of the marital property. The appellant states that the appellee earned more than $4.9 million in 2003, while she spent most of her life as a housewife who reared two children and earned a total of $108,028 in wages from 1966 until 2000. The appellant adds that in spite of the disparity in available income between the parties, that on April 22, 2003, the Family Court of Hancock County entered an interlocutory order directing that any direct cash payments to the appellant were to stop on January 1, 2004, even though the issues surrounding the marital assets had not been decided and that years of litigation were foreseeable.

The appellant's counsel further maintains that the Circuit Court of Hancock County erred by failing to order the family court to award her suit money to pay her legal fees. The appellant's counsel also says that "the current posture of this domestic case is a clear and bold example of simple extortion." The appellant further states that her primary counsel, Mr. Swartz, at the time of the March 26, 2004, hearing before Hancock County Circuit Judge Recht, had been extending her credit since November 2003, and that Mr. Swartz had been forced to advance, out-of-pocket, all travel money, deposition costs, and other expenses. The appellant's counsel also contends that the appellee, to the contrary, "has been able to buy the finest trial lawyer in northern West Virginia and hire any expert anywhere in the world and pay everyone cash on the spot at whatever rate top-of-the-line personnel demand." Thus, the appellant's counsel concludes that "[the appellee's] strategy in this case differs little from the standard strategy of all well-funded defendants-namely, to try to make this case so confusing and so complicated that the litigation goes on for years, during which [the appellant] will be starved out and her lawyers ground down because they can no longer carry her and pay her out-of-pocket expenses."

The appellant alleges that she and the appellee had net assets of roughly $28 million that were acquired through joint efforts during the marriage and that regardless of what interpretation is given to W.Va.Code § 48–7–103, the appellant would be entitled to no less than $1 million. Therefore, the appellant argues that it was an abuse of discretion not to give her at least an advance on her equitable distribution to allow her to live in a manner in which she had become accustomed and to provide sufficient funds to fight her surpassingly well-financed husband in court.

Conversely, the appellee contends that the appellant's arguments before this Court are moot because of the family court judge's July 22, 2004, order, which was rendered after this Court accepted the appellant's Petition for Appeal. The appellee points out that in the family court's order, that the appellant was awarded more than $100,000 in attorney fees with a deferment of additional fees to be determined at the conclusion of spousal support litigation, plus $20,000 per month to begin August 1, 2004, as an advancement towards equitable distribution. The appellee charges that the appellant's filing of her petition for a writ of mandamus was prior to the Family Court's final order, and that the final order demonstrates that the appellant's monetary needs have been adequately addressed. The appellee further states that the appellant's argument that the family court and the circuit court's refusal to order the appellee to pay anything toward the appellant's attorneys' fees is simply incorrect. The appellee asserted that the appellant had at her disposal during the pendency of the litigation, nearly $300,000, of which $160,000 was specifically earmarked for legal fees and other suit costs.

After thoroughly reviewing the record and considering all of the parties' arguments, we believe that the appellant has met the required elements as outlined in *Kucera* for issuance of a writ of mandamus. Accordingly, we reverse and remand the circuit court's denial of the appellant's January 27, 2004, petition for a writ of mandamus. Specifically, we find that the family court should have awarded the appellant sufficient money to cover her outstanding attorney's fees in the

amount of $241,034.42. We further believe that the appellant should have been awarded *pendente lite* support in the amount of $20,000 per month throughout the pendency and duration of the divorce proceedings. We address these issues together since the underlying reasoning is based upon the same factual circumstances.

Initially, we note that W.Va.Code § 48–1–305(a) and (b) (2001) provide that:

(a) Costs may be awarded to either party as justice requires and in all cases the court, in its discretion, may require payment of costs at any time and may suspend or withhold any order until the costs are paid.

(b) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action. An order for temporary relief awarding attorney's fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal is taken or an intention to appeal is stated, the court may further order either party to pay attorney's fees and costs on appeal.

Furthermore, W.Va.Code § 48–5–504(a) and (b) (2001) provide:

(a) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action. The question of whether or not a party is entitled to temporary spousal support is not decisive of that party's right to a reasonable allowance of attorney's fees and court costs.

(b) An order for temporary relief awarding attorney fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repay-

ment of fees and costs by a party to the action to whom or on whose behalf payment of fees and costs was previously ordered. If an appeal is taken or an intention to appeal is stated, the court may further order either party to pay attorney fees and costs on appeal.

█ It is clear from our case law as well as the aforementioned statutory law that a court may compel either party to pay the other party's attorney's fees and court costs in these circumstances, and, if an appeal is taken, the court can further award the payment of appeal fees and costs. We held in Syllabus Point 4 of *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996), that:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

█ As of the date of the oral argument before this Court, the appellant had provided undisputed information that she owed an outstanding balance of $241,034.42 to her attorneys and experts, which was an amount separate from the $68,603.77 that she had already paid for such services. We believe that the circuit court erred in not requiring the family court to provide those fees to the appellant. To the extent that the July 22, 2004, final order of the Family Court of Hancock County, which provided $104,633.75 in attorney's fees, is inconsistent with the $241,034.42 amount provided by this opinion, we order the family court to adjust such order accordingly. Moreover, to the extent that the July 22, 2002, final order of the Family Court of Hancock County conflicts with any issue or provision of this opinion, such order shall be

modified to conform with our decision today. Consequently we remand this case to the family court and order that attorney's fees in the amount of $241,034.42 be awarded immediately, along with the additional relief provided by this opinion.

With regard to spousal support, West Virginia Code § 48–5–502 (2001) provides that: "The court may require either party to pay temporary spousal support in the form of periodic installments, or a lump sum, or both, for the maintenance of the other party." Moreover, W.Va.Code § 48–8–101 explains:

(a) An obligation that compels a person to pay spousal support may arise from the terms of a court order, an antenuptial agreement or a separation agreement. In an order or agreement, a provision that has the support of a spouse or former spouse as its sole purpose is to be regarded as an allowance for spousal support whether expressly designated as such or not, unless the provisions of this chapter specifically require the particular type of allowance to be treated as child support or a division of marital property. Spousal support may be paid as a lump sum or as periodic installments without affecting its character as spousal support.

(b) Spousal support is divided into four classes which are: (1) Permanent spousal support; (2) temporary spousal support, otherwise known as spousal support pendente lite; (3) rehabilitative spousal support; and (4) spousal support in gross.

Additionally, W.Va.Code § 48–7–103 (2001) provides:

In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:

(A) Employment income and other earnings; and

(B) Funds which are separate property.

(2) The extent to which each party has contributed to the acquisition, preservation and maintenance or increase in value of marital property by nonmonetary contributions, including, but not limited to:

(A) Homemaker services;

(B) Child care services;

(C) Labor performed without compensation, or for less than adequate compensation, in a family business or other business entity in which one or both of the parties has an interest;

(D) Labor performed in the actual maintenance or improvement of tangible marital property; and

(E) Labor performed in the management or investment of assets which are marital property.

(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:

(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and

(B) Foregoing by either party of employment or other income-earning activity through an understanding of the parties or at the insistence of the other party.

(4) The extent to which each party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties: Provided, That except for a consideration of the economic consequences of conduct as provided for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property.

▉ In this case, it is undisputed that the appellant and appellee's joint marital assets amount to millions of dollars. The largest asset the couple owns jointly is stock in MTR

Gaming Group, Inc., which was acquired during the marriage, and according to the appellant's counsel, is valued between $28 and $34 million. In spite of the enormous size of the marital property, the Family Court of Hancock County was surprisingly unwilling to provide an adequate advance on the appellant's share of the marital property. Consequently, the family court allowed the appellant access to limited funds, which included the ability to borrow from or acquire cash from various life insurance policies-at interest to be paid by the appellant-as an advance on her equitable distribution of marital assets. In fact, even though the appellant and appellee had been legally separated since December 20, 2002, and the appellant was clearly in an unequal financial position from that of the appellee, the family court issued an April 22, 2003, order requiring that all payments to the appellant were to stop on January 1, 2004. Furthermore, the family court's order essentially severely limited the appellant's access to financial resources even though it was clear from the record, that the couple would eventually be dividing millions of dollars in marital assets. As a result, the appellant has been left with a very limited amount of money with which to pay her attorneys and other expenses necessary to continue to litigate the surrounding issues of the divorce proceeding, while the appellee, in turn, has access to millions. For example, the appellee's 2003 W–2 form indicated that he earned $4,972,590.42 that year.[1] It is simply inconceivable to us that the appellant was not given a reasonable advance on the marital assets or even substantial temporary support given the fact that the financial issues surrounding the marital stocks could remain in litigation for an indeterminate amount of time. Accordingly, we also find that the circuit court erred in not directing the family court to provide *pendente lite* support in the amount of $20,000.00 effective December 20, 2002, and continuing each successive month thereafter until the conclusion of the divorce proceedings. Thus, we order the family court to immediately award to the appellant the amount of $20,000.00, as provided herein, and specifically direct that such amount is not to be considered an advance of equitable distribution. Specifically, it shall be provided as *pendente lite* temporary support.

■ In the appellant's final argument before this Court, she declared that the family and circuit court judges in the Northern Panhandle of West Virginia were unable to fairly decide this divorce case due to the fact that the appellee employs hundreds of West Virginians and runs a business that supports the local economy and provides millions of dollars per year in taxes to the State and to Hancock County. The appellant's counsel further declared that unless a family court judge and a circuit court judge are appointed from southern West Virginia, his client would not be able to avoid "some good old fashioned West Virginia home cooking." Conversely, the appellee responded that there is simply no evidence of bias by the family and circuit court judges and that the appellant's counsel's comments were unprofessional and borderline defamatory statements.

Our law with regard to the disqualification of a judge is discussed in Canon 3E(1) of the West Virginia Code of Judicial Conduct. The Canon reads as follows:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) the judge knows that he or she, individually or as a fiduciary, or the judge's

---

**1.** The appellee contends that the $4.9 million figure "presents an entirely misleading picture of [his] financial situation." The appellee maintains that this amount includes as income stock options that he exercised, but did not subsequently sell. Regardless of the appellee's explanation it is clear to us that he has substantial funds at his disposal.

spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than *de minimis* interest that could be substantially affected by the proceeding;

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director or trustee, of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than *de minimis* interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

Moreover, the rules with regard to disqualification of a judge are further spelled out in West Virginia Trial Court Rule 17.01, which states in pertinent part:

Upon a proper disqualification motion, as set forth in this rule, a judge shall be disqualified from a proceeding only where the judge's impartiality might reasonably be questioned in accordance with the principles established in Canon 3(E)(1) of the Code of Judicial Conduct.

(a) In any proceeding, any party may file a written motion for disqualification of a judge within thirty (30) days after discovering the ground for disqualification. The motion shall be addressed to the judge whose disqualification is sought and be filed with the circuit clerk at least seven (7) days in advance of any date set for a non-trial proceeding in the case or at least twenty-one (21) days in advance of any trial date set in the case and shall:

(1) State the facts and reasons for disqualification, including the specific provision of Canon 3(E)(1) of the Code of Judicial Conduct asserted to be applicable;

(2) Be accompanied by a verified certificate of counsel of record or unrepresented party that they have read the motion; that

after reasonable inquiry, to the best of their knowledge, information, and belief, it is well grounded in fact and is warranted by either existing law or a good faith argument for the extension, modification, or reversal of existing law; that there is evidence sufficient to support disqualification; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

(3) Be submitted by copy directly to the judge, and served upon counsel of record or unrepresented party.

(b) Upon the judge's receipt of a copy of such motion, regardless of whether the judge finds good cause and agrees to the disqualification motion or not, the judge shall:

(1) proceed no further in the matter;

(2) transmit forthwith to the Chief Justice a copy of the motion and certificate, together with a letter stating the judge's response to the motion and the reasons therefor, including such matters and considerations as the judge may deem relevant; and

(3) make a copy of the letter part of the record and file same in the office of the circuit clerk with copies to counsel of record and any unrepresented party.

*See eg., Pritt v. Vickers,* 214 W.Va. 221, 588 S.E.2d 210 (2003); *State ex rel. E.I. Dupont De Nemours and Co. v. Hill,* 214 W.Va. 760, 591 S.E.2d 318 (2003); *State ex rel. Lambert v. King,* 208 W.Va. 87, 538 S.E.2d 385 (2000). Despite the appellant's blanket assertions of bias on the part of the family and circuit courts, she has not even filed a disqualification motion. The appellant could have filed such a motion at numerous times and chose not to do so. Thus, the appellant has failed to comply with the clear and simple steps set forth with regard to seeking the disqualification of a judge, and therefore, her claim for relief on this issue is without merit.

In summary, we reverse the circuit court's denial of the appellant's petition for a writ of mandamus and remand this case to the Family Court of Hancock County to award the appellant relief consistent with this opinion. We further hold that such relief shall be

provided to the appellant immediately and therefore issue the mandate of this Court contemporaneously with this opinion. Specifically, we order the family court to file an appropriate order granting as relief $20,000 *pendente lite* support to the appellant from December 20, 2002, until such date that the surrounding financial issues in this divorce have been fully and fairly decided. Moreover, such order shall include an immediate award of $241,034.42 to pay the appellant's outstanding attorney's fees.

The Clerk of this Court is directed to issue the mandate in this case forthwith.

## IV.

### CONCLUSION

Accordingly, we hereby reverse the April 8, 2004, denial of the appellant's writ of prohibition by the Circuit Court of Hancock County, and remand the matter to the Family Court of Hancock County for the immediate entry of an order as provided herein and for further proceedings consistent with this opinion.

Reversed and remanded with directions.

Justice McGRAW, deeming himself disqualified, did not participate in the decision of this case.

Judge SPAULDING sitting by temporary assignment.