# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**William J.,**
**Respondent Below, Petitioner**

**vs)  No. 17-1013**  (Randolph County 15-D-63)

**Marilyn J.,**
**Petitioner Below, Respondent**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner  William J., by counsel Frank P. Bush, Jr. and Jefferson L. Triplett, appeals the equitable distribution award of marital property ordered by the Family Court of Randolph County and affirmed by final order entered in the Circuit Court of Randolph County on October 16, 2017. Respondent Marilyn J., by counsel Debra V. Chafin and Larry W. Chafin, filed a response and cross-assigns as error the denial of her requests for spousal support and attorney's fees. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner ("Husband") and Respondent ("Wife") were married on February 4, 1967, in Randolph County, where they lived for the duration of their marriage. The parties agree that their date of separation was March 17, 2015. Wife filed for divorce on March 19, 2015. The divorce was granted on December 27, 2016, on the ground of irreconcilable differences.[1]

Following a final hearing that was conducted over seven days, the Family Court of Randolph County determined that both parties worked during the marriage; that Husband was the primary breadwinner; that Wife is retired and has social security and pension income; and that Husband, who is semi-retired, also receives social security income, an annuity, and some income from his business. The family court found that the parties' respective incomes were relatively equal.

---

[1] Wife alleged that Husband abused her during the marriage. However, the Family Court of Randolph County's December 27, 2016, order found that Wife's allegations of abuse were not corroborated. Wife challenges this finding in her cross-assignments of error relating to the family court's denial of her requests for spousal support and attorney's fees. *See infra.*

1

From the roughly $3 million marital estate (which had no debt), the family court awarded Wife assets in the total amount of $1,475.799.13, consisting of real and personal property and including almost $411,000 in cash, and CDs valued at $724,002. The court awarded Husband $1,553,344.20 in real and personal property, including the business equipment and inventory.

By order entered on January 12, 2017, the family court granted Husband's motion to stay the proceedings pending appeal. The court thereafter denied both parties' motions for reconsideration and Wife's motion for attorney's fees. Husband appealed the family court's order to the Circuit Court of Randolph County and Wife filed a cross-appeal. Following a hearing, the circuit court, by order entered on October 17, 2017, denied the parties' appeals and affirmed the family court's order. This appeal followed.

On appeal, Husband raises five assignments of error in which he challenges various findings and conclusions related to the family court's equitable distribution of the marital property. This Court reviews the circuit court's order under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syllabus, *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004).

In his first assignment of error, Husband argues that the family court failed to divide the marital property equally and in accordance with various provisions of the equitable distribution statute. *See* W.Va. Code § 48-7-101 (stating, in part, that "upon every judgment of . . . divorce . . . the court shall divide the marital property of the parties equally between the parties."). Husband argues that the family court abused its discretion by awarding Wife the majority of the parties' cash and liquid assets while awarding Husband the business equipment and inventory at assigned values that were based on the average of the appraisals made by the parties' respective experts. Husband argues that the court failed to explain its reasons for dividing the property in this manner, in violation of W.Va. Code § 48-7-106.[2] Husband also argues that the court "failed to consider that the average value of two appraisals would yield a resulting value that is significantly uncertain, especially with no consideration for the tax consequences of the sale of said property. This is extremely unfair to [Husband], considering that [Wife's] award of $1.3

---

[2] West Virginia Code § 48-7-106 states:

> In any order which divides or transfers the title to any property, determines the ownership or value of any property, designates the specific property to which any party is entitled or grants any monetary award, the court shall set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted.

million could be determined to the penny." According to Husband, the family court should have ordered a sale of the business property and split the proceeds between the parties, as authorized by West Virginia Code § 48-7-104(7)(E).[3]

We disagree and find no error. Notwithstanding Husband's argument to the contrary, the family court made extensive findings regarding the distribution of the marital estate. Husband's initial proposed equitable distribution list, filed with the family court on May 17, 2016, specifically asked that the court award him business property valued by Husband's own appraiser at $227,715. Though Husband twice modified his request for this property (proposing in his fifth proposed equitable distribution list and in his final proposed equitable distribution list that the parties be awarded one-half the net proceeds of an auction of the business property), the family court, in its discretion, awarded the business property to Husband, as he originally requested. While Husband described himself as "semi-retired," he admitted to renewing his contractor and electrician licenses after the parties separated. His 2015 income tax return revealed gross receipts and sales from the business in the amount of $50,168. After the parties separated, Husband ran the business, was in sole possession and control of the business property, made repairs to the business equipment, purchased supplies to support the business, and, after the parties separated, built a road at the business properties. Given these facts, we find that the family court did not abuse its discretion in declining to order a sale of the business equipment and inventory and, instead, awarding the business equipment and inventory to Husband as part of his equitable distribution.[4]

---

[3] West Virginia Code § 48-7-104(E) states, in pertinent part, as follows:

After considering the factors set forth in . . . [§ 48-7-103], the court shall:
. . . .
(7) Transfer title to such component parts of the marital property as may be necessary to achieve an equitable distribution of the marital property. To make such equitable distribution, the court may:
. . . .
(E) Order a sale of specific property and an appropriate division of the net proceeds of such sale: Provided, That such sale may be by private sale, or through an agent or by judicial sale, whichever would facilitate a sale within a reasonable time at a fair price.

[4] Wife testified before the family court that, in the presence of one of the personal property appraisers, Husband declared that if the business equipment and inventory were to go to auction, "I'll just get me an auctioneer and I will have him to sell this stuff and I will buy it for ten (10) cents on the dollar. You [Wife] won't spend your money so you won't get nothing." Wife further testified that Husband also wanted to auction the business "but he is still in business . . . . and if he continues with his business . . . he needs his business . . . his equipment." Regarding what contingencies she would request if an auction were ordered, Wife replied, "I would like to have [an] impartial auctioneer because [Husband] knows so many . . . because he has been to so many auctions that he could get the auctioneer to not advertise and [then] buy i[t] (continued . . .)

3

Regarding Husband's argument that the family court failed to consider that the assigned values of the business equipment and inventory were "uncertain," including the tax consequence of a sale of the same, he fails to cite to anywhere in the record to establish that he presented evidence to the family court of the costs associated with converting the business property to cash. "'[T]he Supreme Court of Appeals is limited in its authority to resolve assignments of nonjurisdictional errors to a consideration of those matters passed upon by the court below and fairly arising upon the portions of the record designated for appellate review.' Syllabus point 6, in part, *Parker v. Knowlton Construction Co.,* 158 W.Va. 314, 210 S.E.2d 918 (1975)." Syl. Pt. 6, *Skidmore v. Skidmore*, 225 W. Va. 235, 691 S.E.2d 830 (2010). We have explained that

> [t]he rationale behind this rule is that when an issue has not been raised below, the acts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

*Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993).

Moreover, Husband does not cite to any legal authority requiring the family court to ascertain, on its own, the costs Husband would incur in selling the business property or the tax consequences related thereto. In any event, this Court has long cautioned that "[t]he tax implications of a future sale of property to a third party are too speculative to allow for a tax deduction against the other spouse's share unless it can be ascertained under the court's decree that such sale will actually occur." Syl. Pt. 4, *Bettinger v. Bettinger*, 183 W. Va. 528, 396 S.E.2d 709 (1990). *See also Id*. at 535, 396 S.E.2d at 716 (recognizing "'that hypothetical tax consequences upon the future sale or transfer of marital assets should not be deducted from present value for equitable distribution purposes. The hypothetical tax is simply too speculative to permit a reduction in value.'" quoting *Orgler v. Orgler,* 568 A.2d 67, 73-74 (N.J. Super. Ct. 1989)). We, therefore, conclude that Husband's argument that the family court should have considered the costs of selling the business property and the attendant tax consequences in determining the equitable distribution of the marital property is without merit.[5]

---

for ten cents on the dollar . . . because that's what he does." On appeal, Husband does not refute this argument.

[5] Husband also argues that there were alternative statutory remedies that the family court should have ordered and that it abused its discretion in failing to do so. First, he argues that the business property is not readily susceptible to division between the parties and, given that Wife did not want it and Husband requested that it be liquidated and the proceeds split equally, the family court should have ascertained the projected results of a sale so that Husband's liquid assets would ultimately be the same as those awarded to Wife. *See* W.Va. Code § 48-7-104(5) ("After consdering the factors set forth in . . . [§ 48-7-103], the court shall: . . . . (5) In the case of any property which is not susceptible to division, ascertain the projected results of a sale of such (continued . . .)

Husband's second assignment of error concerns the family court's conclusion that the $205,000 stipulated value of the real property known as the Kelly Mountain property, which was awarded to Husband, did not include the timber growing thereon.[6] The family court assigned a separate value to the timber of $40,000, as ascertained by a certified timber appraiser. Husband argues that the original appraisal by Husband's expert real estate appraiser "already accounted for, at least in part, the value of the standing timber." Thus, he contends that the family court abused its discretion in adding the stand-alone value of the timber to the stipulated appraised value; hence, the overall property awarded to Husband should be reduced by $40,000, and the equitable distribution values adjusted accordingly.

We disagree. The record reveals that the real estate appraiser, Wayne Hart, specifically advised that he "did not directly address timber values of the subject property. . . . [T]imber values 'per s[e]' are out of the appraiser's realm of expertise and the appraisers recommend that the property be cruised by a qualified professional." During the course of the family court proceedings, Husband failed to cross-examine Mr. Hart on this issue or offer any evidence in rebuttal. Meanwhile, Wife's qualified timber expert, John Martin, valued the timber at $40,000 and, based upon that figure, the family court assigned the value of the timber in the equitable distribution award. Later, however, Husband, in support of his motion for reconsideration of the family court's order, submitted a letter dated January 23, 2017, from Mr. Hart, in which he opined that "the value of the timber was accounted for, at least in part, in the overall value of my appraisal report of the Kelly Mountain real estate[,]" and that in combining the stand-alone value of the timber and the appraised value of the real property, the court overvalued the property. Since this letter was submitted well after the close of all of the evidence and entry of the December 27, 2016, divorce decree, it was clearly untimely.[7] Accordingly, we find that the family court did not abuse its discretion in assigning a separate value of $40,000 to the timber on the Kelly Mountain property.

In his third assignment of error, Husband argues that the family court erred by failing to award Husband credit for expenses for utilities, insurance, and taxes that he was ordered to pay to maintain the marital estate during the pendency of the proceedings below. Husband argues that he submitted a summary of marital bills that he paid and a journal of cash disbursements

---

property[.]"). Second, Husband argues that the family court should have retained jurisdiction over the property until a sale occurred and then equitably divided the proceeds from such sale, as authorized by West Virginia Code § 48-7-104(1)(B). However, Husband fails to cite to anywhere in the record where he argued that the family court should have divided the business equipment and inventory in accordance with these statutory provisions. Therefore, we decline to address this argument on appeal. *See Skidmore*, 225 W. Va. at 237, 691 S.E.2d at 832, at syl. pt. 6.

[6] According to Husband, this real property consisted of a cabin on 49.71 acres of wooded land.

[7] A copy of the order denying the motion for reconsideration is not included in the record on appeal. Thus, it is unclear in what manner the family court addressed this evidence in that order.

showing his record of bill payment, and then later submitted canceled checks and receipts as evidence of such payment. He argues that he proved payment of $38,900 toward marital expenses and that he is entitled to credit for that amount under *Conrad v. Conrad*, 216 W.Va. 696, 612 S.E.2d 772 (2005).[8]

> In *Conrad,* this Court recognized that
>
> [r]ecoupment of payment of marital debt by one party prior to the ultimate division of marital property has often been permitted upon a final equitable distribution order. *See Jordan v. Jordan*, 192 W.Va. 377, 452 S.E.2d 468 (1994) (final allocation of marital debt permitted husband to recoup his expenses related to the marital home); *Kapfer v. Kapfer*, 187 W.Va. 396, 419 S.E.2d 464 (1992) (the parties agreed to allow husband to recoup from home sale all mortgage principal he paid on marital home after date of separation).

216 W.Va. at 702, 612 S.E.2d at 778. Also in *Conrad*, this Court ordered that, upon receipt of evidence of payments of marital debt and maintenance on the marital home made between the parties' separation and divorce, the husband "should be entitled to offset one-half of that amount from the total owed to [the wife] . . . . Mortgage or other home-related expenses made by [the husband] during separation were marital debt and should be distributed as such during equitable distribution." *Id.*

Here, the family court found that, based upon the evidence, Husband was not entitled to *Conrad* credits "for most of the expenses he paid and claimed credit for[,]" including the following: the electric bills for rental property and the business because they were determined to be tax deductible; real estate taxes for the Belington property because they were marital and pre-separation expenses; the electric bills for the Kelly Mountain and Gilman properties because Husband "used these properties for his personal use and is therefore responsible for the expenses incurred[;]" business insurance because they are Husband's business expenses and are tax deductible; rental property insurance because they are tax deductible; and rental taxes because Husband "can offset the expenses against the income."

On appeal, Husband fails to argue which of these particular findings by the family court were made in error. Instead, he generally states that he "was ordered to make interim payments toward marital debt[,]" and that it was error for the family court to conclude that, "since [he] was awarded the business assets, as an offset, he should be solely responsible to pay the interim marital debts." This Court finds Husband's argument to be unpersuasive. Although the family court denied *Conrad* credits for Husband's payments related to business insurance and the

---

[8] Husband also argues that the family court abused its discretion in ordering that he reimburse Wife $7,677 of the $10,000 he was permitted to withdraw from the parties' joint account during the pendency of the proceedings below because, the court found, he used that amount for his own benefit. However, Husband fails to explain the alleged error in this ruling and offers no support for his argument in this regard.

business's electric bill (both of which relate to the maintenance of marital assets awarded to him), Husband fails to offer any cogent or legitimate argument as to why the court's denial of *Conrad* credits for the remaining expenses is erroneous. This Court has cautioned that "'[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus Point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966)." Syl. Pt. 2, *W. Virginia Dep't of Health & Human Res. Emp. Fed. Credit Union v. Tennant,* 215 W.Va. 387, 599 S.E.2d 810 (2004). We, therefore, conclude that Husband failed to satisfy his burden of proof and find that the family court did not abuse its discretion in denying *Conrad* credits to Husband.

In his fourth assignment of error, Husband argues that the family court erred in finding that the gross proceeds from a post-separation transaction were marital property and subject to equitable distribution. He claims that the invoice and payment relating to the sale of a pre-engineered steel building that yielded $12,010.77 were his separate property and that the family court erred in concluding otherwise.

Though the parties agree that, during the proceedings below, the family court found the $12,010.77 payment to be marital property,[9] the family court's order omits any mention of this payment as a marital asset subject to equal division between the parties. Wife argues, and Husband does not dispute, that Husband was permitted to keep the $12,010.77 payment and was not ordered to pay Wife half of these funds. Thus, any error in the family court's conclusion that the payment was marital property, if it was error, was harmless.

In his final assignment of error, Husband argues that the family court erred in its characterization and valuation of the jewelry that was awarded to Wife. Husband generally asserts that a particular diamond ring appraised at $10,0000 was, contrary to the court's findings, not an anniversary gift from Husband to Wife because it was not purchased "anywhere near the anniversary and the invoice showed [Wife] as the customer." He further argues that Wife failed to disclose all of her jewelry for appraisal and that, with the exception of two items that Husband admitted purchasing for Wife, the remaining pieces of jewelry were marital assets that should have been divided equally between them. Husband also contends that the family court should have assessed a total value to the jewelry of $100,0000 as proposed by his expert, less the value of the jewelry he gifted to Wife ($2,000).

Based upon our review of the record, we find no error. Husband's arguments in support of his position that Wife's jewelry is marital property are not clearly articulated. Furthermore, he references portions of the record that are not relevant or that otherwise do not support his claims. Husband has failed to "carry the burden of showing error in the judgment of which he now complains. . . . Error will not be presumed, all presumptions being in favor of the correctness of

---

[9] Neither party cites to the record to direct this Court to the family court's ruling regarding this payment. Thus, it is unclear at what point in the proceedings the court found that the payment was a marital asset.

7

the judgment.'" *Tennant*, 215 W.Va. at 388, 599 S.E.2d at 811, at syl. pt. 2, in part. (Internal citation omitted). *See State Dep't of Health v. Robert Morris N.,* 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (cautioning that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted)). Here, Husband fails to to meet his burden of proof in demonstrating that the family court abused its discretion in its characterization and valuation of Wife's jewelry.

In her first cross-assignment of error, Wife argues that the family court abused its discretion in denying her request for spousal support. She contends that the court's order fails to properly analyze the factors identified in West Virginia Code § 48-6-301[10] even though she

---

[10] West Virginia Code § 48-6-301 states, in relevant part, as follows:

 (b) The court shall consider the following factors in determining the amount and duration of spousal support and separate maintenance, if any, to be ordered under the provisions of parts V and VI, § 48-5-1 *et seq.* of this code as a supplement to or in lieu of the separation agreement:
(1) The length of time the parties were married;
(2) The period of time during the marriage when the parties actually lived together as husband and wife;
(3) The present employment income and other recurring earnings of each party from any source;
(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market, and custodial responsibilities for children;
(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of § 48-7-6 *et seq.* of this code, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support and separate maintenance: *Provided,* That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;
(6) The ages and the physical, mental, and emotional condition of each party;
(7) The educational qualifications of each party;
(8) Whether either party has foregone or postponed economic, education, or employment opportunities during the course of the marriage;
(9) The standard of living established during the marriage;
(10) The likelihood that the party seeking spousal support and separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;
(11) Any financial or other contribution made by either party to the education, training, vocational skills, career, or earning capacity of the other party;
(continued . . .)

8

"testified meticulously regarding the relevant factors" of the statute. In particular, Wife extensively argues that she proved, through the testimony of two expert witnesses, that Husband physically, sexually, and emotionally abused her during the marriage and that Husband was at fault in their breakup. Wife further argues that she proved that the parties had a lengthy marriage and that she worked outside the home and carried health insurance for the family while raising their children,[11] which allowed Husband to build the business that generated the $3 million marital estate. According to Wife, Husband was in a superior financial position than her and continued to operate the business after they separated, as evidenced by his 2015 tax return. Wife argues that the family court should have awarded her nominal spousal support in order to preserve her right to seek a modification of the same in the future. *See Banker v. Banker*, 196 W.Va. 535, 551 n.7, 474 S.E.2d 465, 481 n.7 (1996) (explaining that "[n]ominal alimony is not awarded to provide additional income or maintenance but solely for the purpose of leaving open for later resolution the issue of more substantial alimony under the appropriate circumstances.").

This Court has held that

"[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977).

Syl. Pt. 2, *Drennen v. Drennen*, 212 W. Va. 689, 575 S.E.2d 299 (2002).

---

(12) The anticipated expense of obtaining the education and training described in § 48-6-301(b)(10) of this code;
(13) The costs of educating minor children;
(14) The costs of providing health care for each of the parties and their minor children;
(15) The tax consequences to each party;
(16) The extent to which it would be inappropriate for a party, because that party will be the custodian of a minor child or children, to seek employment outside the home;
(17) The financial need of each party;
(18) The legal obligations of each party to support himself or herself and to support any other person;
(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
(20) Any other factors as the court determines necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support and separate maintenance.

[11] According to the family court's order, the parties had four children, one of whom died at childbirth and another as an adult. There are two other emancipated children.

We first address Wife's claim that Husband abused her during the marriage and that this factor should have been considered in whether to award her spousal support. *See Banker*, 196 W.Va. at 550, 474 S.E.2d at 480 (recognizing that "an examination of the relative fault of the parties in the deterioration of the marriage is a proper consideration in assessing attorney['s] fees [and expert witness fees]." (Internal citation omitted)). In support of her claim, Wife presented the testimony of two counselors who treated her and who opined that Husband was abusive to her. The family court determined that "[s]ince neither of the counselors witnessed the abuse and only based his or her findings upon the [Wife's] statements, the [c]ourt does not find that the fault basis asserted by [Wife] for the divorce was corroborated by the testimony of the counselors." It is beyond cavil that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). *See also State v. Guthrie,* 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). Thus, we will not disturb the family court's conclusion that Wife's allegations of abuse were not sufficiently corroborated. In denying Wife's request for spousal support, the family court concluded that "the parties['] incomes are relatively equivalent, some items of the budget of [Wife] are not entirely realistic and [Husband's] income is insufficient to support such an award."[12] Given the court's findings, and the fair and equitable distribution of the marital estate, this Court cannot conclude, based upon the record before it, that the family court abused its discretion in denying Wife an award of spousal support.

Finally, Wife cross-assigns as error the family court's ruling that Wife is not entitled to attorney's fees and costs incurred in the litigation of the divorce. She contends that, as a result of Husband's "discovery abuses" and failure to include her in the appraisal process, the costs of which they had initially agreed to share, Wife was forced to engage a second appraisal for the purpose of appraising personal property that was either missing from the first appraisal or was undervalued in that appraisal. Wife further argues that she was forced to engage a timber cruiser to ascertain the value of the timber on the Kelly Mountain property. She states that this process led to the hiring of new (current) counsel, an additional eighteen months of litigation, including extensive discovery, additional expert fees, additional hearing days, and this appeal. Finally, Wife argues, Husband's superior financial position and fault in the breakup of the marriage should also have been considered by the family court.

Regarding the propriety of an award of attorney's fees, this Court has held:

"In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney,

---

[12] At the time of the final hearing, Husband was seventy-one years old, at which time, according to Wife, he had monthly Social Security and IRA income of $1,566, while Wife had Social Security and pension income of $1,130.50.

the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syllabus Point 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

Syl. Pt. 2, *Arneault v. Arneault*, 216 W. Va. 215, 605 S.E.2d 590 (2004).

In denying Wife's request for attorney's fees, the family court, relying on syllabus point two of *Arneault*, and recognizing that many of the factors "are similar or identical to factors considered by the [c]ourt in its alimony award," "determined that because both parties changed attorneys and both parties reneged on prior agreements, the parties will be responsible for their own attorney's fees with a few exceptions."[13] We find no abuse of discretion by the family court in its denial of Wife's request for attorney's fees. As previously indicated, the family court's finding that Husband was not at fault in the breakup of the marriage will not be disturbed in this appeal. The family court ordered that the parties evenly split the $3 million marital estate, which was entirely debt free. Wife was awarded cash in excess of $400,000 while Husband's cash award was significantly less. The court also found that the parties' incomes were relatively equal. Neither party claimed that that they lacked the ability to pay their own attorney's fees and costs. Given these facts, we conclude that the family court did not abuse its discretion in denying Wife's request for attorney's fees and costs.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

---

[13] The family court awarded both parties attorney's fees in connection with the preparation and review of a certain exhibit, which, when set-off one against the other, resulted in Wife receiving a nominal award.

11