301 S.E.2d 627

**In re L.E.C.**

**No. 15688.**

Supreme Court of West Virginia.

March 25, 1983.

---

Michael T. Clifford, Charleston, for complainant.

Robert H. Davis, Jr., W.Va.State Bar, Charleston, for defendant.

HARSHBARGER, Justice:

This is an appeal by a lawyer who was privately reprimanded by the Committee on Legal Ethics of the West Virginia State Bar. Can he challenge a private reprimand in this Court?

■ The Committee on Legal Ethics, created by the By-Laws of the West Virginia State Bar, has broad jurisdiction to conduct legal ethics investigations and is authorized to hold hearings and to make findings and recommendations. Article VI, § 4, By-Laws of the West Virginia State Bar. When the Committee recommends public reprimand, or suspension or annulment of an accused attorney's license to practice law it must sue in this Court to impose such sanctions. Article VI, § 18, By-Laws of the West Virginia State Bar. Absent a mistake of law or arbitrary assessment of facts, the Committee's recommendations are to be given substantial consideration. *In Re Brown,* 166 W.Va. 266, 273 S.E.2d 567 (1980).

■ As the final arbiter of legal ethics problems, *State ex rel. Sowa v. Sommerville,* 167 W.Va. 353, 280 S.E.2d 85 (1981), we must make the ultimate decision about public reprimands, suspensions or annulments of attorneys' licenses to practice law. However, if the Committee decides that the case merits only a private reprimand, it administers that sanction without our involvement. Article VI, § 17(c), By-Laws of the West Virginia State Bar.

The bar by-laws are silent about whether an attorney may petition us to review the Committee's decision to reprimand him.

■ An attorney who is privately reprimanded by the Committee on Legal Ethics has a sufficiently weighty personal and professional interest to appeal to us to challenge the reprimand. No attorney should be held to have violated the professional and ethical standards of his profession and have no opportunity for review of the correctness of that decision.

A private reprimand is not insignificant. A lawyer's good record is important to him. *See, e.g., The Committee on Legal Ethics of the West Virginia State Bar v. Pence,* W.Va., 216 S.E.2d 236 (1975).[1]

---

**1.** The disciplinary process in this and other states is administered by a disciplinary agency as an adjunct to the court. The rules and regulations by which the disciplinary system is administered vary from state to state. Though no comprehensive survey has been undertaken, we note that other states permit the agency to administer private reprimands but allow for an appeal to the state's highest court. *See, e.g., The Florida Bar v. W.H.P.,* 384 So.2d 28 (Fla.1980),

■ We adopt this rule permitting review of private reprimands under our inherent power to supervise, regulate and control the practice of law, *see, e.g., State ex rel. Partain v. Oakley,* 159 W.Va. 805, 227 S.E.2d 314 (1976); *W.Va. State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959), and our authority to prescribe procedures for disciplining, suspending, and disbarring attorneys-at-law. *W.Va.Code,* 51–1–4a(c).

This proceeding was formally commenced on December 29, 1980, when respondent was charged with violations of the Code of Professional Responsibility and directed to appear before the Committee to answer those charges. There was a formal hearing, requested by the respondent, before a subcommittee of the Committee on Legal Ethics. On June 18, 1982, a majority of the Committee determined there was merit in the charges and issued a private reprimand. In response to respondent's suggestion, the Committee issued Ethics Opinion No. 79–36 on June 24, 1982, to inform the West Virginia State Bar of the Committee's opinion. Respondent then petitioned this Court for an appeal.

The undisputed facts are that in the early morning hours of January 6, 1979, an individual who we will refer to as "B", while driving an automobile, ran over another person. B was arrested, taken to a magistrate, and charged with driving a motor vehicle without a valid operator's license and driving under the influence of alcohol. While further charges were being considered by the magistrate, the victim died and B was then charged with murder. B telephoned his mother and told her about the charges against him.

A short time later, B's mother telephoned respondent and discussed retaining him and his partner to represent B. A $5,000 fee was agreed upon to be paid by B's grandfather in $500 installments, and respondent immediately employed an investigator to help prepare the defense.

When the first installment was not paid and it became clear that there would be no payments, B filed a pauper's affidavit and respondent and his partner were appointed to represent B on January 25, 1979.[2] On April 5, 1979, a jury found B guilty of first degree murder.

On the day of sentencing, B's mother delivered a $500 check to the respondent. The funds for this payment were obtained with respondent's assistance when a $1,000 cash bond previously posted on the misdemeanor charges was released. The check, drawn on B's grandfather's account, was made payable to cash and was deposited in respondent's law office account.

Thereafter, respondent submitted a verified Defense Counsel Voucher for services rendered and expenses incurred and received $1,500.00. W.Va.Code, 29–21–14. The voucher was submitted by mail to the trial court without indication that the lawyer already received $500 for his work on the case. The voucher form does not provide for such disclosure.

The Committee concluded that respondent had a duty to disclose to the trial court any money he had received from B's family, and further that the "statutory fee paid to him constituted his exclusive compensation and he had no right to receive additional compensation from B or his family without disclosing that fact to the Court which appointed him." The Committee also stated that an attorney owes a duty of "utmost frankness" to the trial court and reprimanded him for failing to inform the court about the money.

The respondent's contention throughout has been that the money he got from B's family was for services rendered on the misdemeanor and murder charges, before his appointment. The Committee apparently resolved this issue against him, finding that "it appears from the evidence that no

---

32 West's F.S.A. Integration Rules of the Florida Bar, Art. 11, Rule 11.11; Miss.Code Ann. § 73–3–319(b) (Cum.Supp.1982); 22 S.C.Code Ann., Rules on Disciplinary Procedure § 14(B)(1) (Cum.Supp.1982).

**2.** Although the Committee's opinion states that respondent and his partner were appointed on January 17, 1979, the record reveals the appointment was made on January 25, 1979. The date of the appointment is not in dispute in this Court.

action was taken on the misdemeanor charges by the magistrate and that the charges were ultimately dismissed. Nor does the evidence indicate the extent of any services rendered by the respondent or his partner during the period of January 6, the date of B's arrest, and January 17, the date of their appointment to defend him on the felony charge." Respondent contends that he had no duty to make a disclosure to the trial court and that to discipline him for nondisclosure is an *ex post facto* application of law.

There is scarcely any law on this subject and the decisions that do exist are divided, contain somewhat divergent analyses, and relate to singular fact patterns. Annot. 43 A.L.R.3rd 1426 (1972).

The earliest case, *Commonwealth v. Wormsley*, 294 Pa. 495, 144 A. 428 (1928), involved two attorneys who sought to withdraw an appeal in a murder case because the indigent's relatives had not paid their fees and expenses as promised. The court ruled that the lawyers had a duty to appeal to protect their client and had to accept as their exclusive compensation the amount provided by statute. Historically, of course, attorneys, as court officers, were expected upon request by the court, to represent indigent criminal defendants without any compensation.

The Supreme Court of New Mexico in *Hale v. Brewster*, 81 N.M. 342, 467 P.2d 8 (1970), concluded that an attorney appointed to represent an indigent defendant must accept as his sole compensation the payment provided by statute. After being appointed, this lawyer took a promissory note from the accused and his mother and after being paid a statutory fee, sued on the note. The court, ruling against him, emphasized that lawyers are obliged to accept criminal appointments and that the statutory fees should be their exclusive compensation. Relying on traditional contract principles, the court held that the note would not be valid, if it was for services rendered in the criminal case, because the client would not have received anything of value that he was not entitled to receive without payment of any amount.

Relying on these two cases, one legal encyclopedia states:

"In general, since an attorney is an officer of the court, he may be required to defend an accused person and accept such compensation, within the limits of the statute or rule, as the court may allow, *and ordinarily the amount allowed by the court must represent the exclusive compensation of the attorney, and he has no right to contract with other persons for fees.*" (Emphasis supplied.) (Footnote references omitted.) 7A C.J.S. Attorney & Client § 301 (1980).

The only case reaching a contrary result, *Oliver v. Mitchell*, 14 Utah 2d 9, 376 P.2d 390 (1962), upheld a contract requiring the client to pay for future legal services. The court rejected the argument that there was no consideration for the contract. Utah did not have a statute providing compensation for attorneys appointed to represent indigent criminal defendants.

■ When a lawyer has been appointed to represent an indigent criminal defendant, he may not solicit or contract for an additional fee for his professional services with the indigent criminal defendant or any other person: the compensation provided by statute, W.Va.Code, 29–21–14 [1981], for an attorney's actual and necessary services and expenses, represents the exclusive source of compensation.

■ If, however, a lawyer has been paid from a private source for services rendered or expenses incurred representing an indigent criminal defendant who he later is appointed to represent pursuant to W.Va. Code, 62–3–1, he shall disclose this fact to the trial court. This disclosure must be made when he submits a Defense Counsel Voucher seeking payment from public funds as provided for by W.Va.Code, 29–21–14.

■ An attorney who is initially retained but later appointed to represent an indigent criminal defendant is not limited exclusively to the compensation provided by statute, W.Va.Code, 29–21–14, if he can demonstrate that he has received compensation for work or expenses incurred before his

appointment. He can retain those funds and be compensated for his later work per W.Va.Code, 29–21–14, as if he had not been previously retained.

Whether the $500 payment in this case was for services rendered and expenses incurred before the appointment is not clear. We need not decide that question, however, because the Committee's private reprimand is based entirely on respondent's non-disclosure of any payment.

 We agree with the Committee's imposition of a private reprimand for failure to disclose the payment. It is conceded that respondent was familiar with the rule that an attorney may not solicit or contract for an additional fee after having been appointed in a criminal case. The evidence clearly warrants a finding that respondent not only knew he should have disclosed the $500.00 payment but also that he sought to avoid its discovery by demanding, albeit unsuccessfully, that the payment be made to him in cash rather than by check.

For the foregoing reasons, we affirm the Committee's imposition of a private reprimand.

Affirmed.