617 S.E.2d 876

**William K. STERN, et al., Plaintiffs Below, Appellees**

**Franklin Stump, Danny Gunnoe and Teddy Joe Hoosier, Appellants**

v.

**CHEMTALL INCORPORATED, a Georgia Corporation, et al., Defendants Below, Appellees**

No. 31776.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 23, 2005.

Decided May 31, 2005.

Opinion of Chief Justice Albright July 6, 2005.

Opinion of Justice Starcher July 14, 2005.

R. Dean Hartley, J. Zachary Zatezalo, Michael P. Giertz, Hartley & O'Brien, P.L.L.C., Wheeling, and E. William Harvit, Harvit & Schwartz, L.C., Charleston, and Bradley Oldaker, Bailey, Stultz, Oldaker & Greene, P.L.L.C., Weston, for William K. Stern, et al.

Scott S. Segal, Deborah L. McHenry, The Segal Law Firm, Charleston, and Theodore Goldberg, David B. Rodes, Goldberg, Persky, & White, Pittsburgh, PA, for Franklin Stump, et al.

Landers P. Bonenberger, Jeffrey A. Holmstrand, McDermott & Bonenberger, Wheeling, for Chemtall, Inc.

Robert P. Martin, Todd M. Sponseller, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, for Zinkan Enterprises.

Harry G. Shaffer, Shaffer & Shaffer, Madison, and Mark P. Fitzsimmons, Theresa A. Queen, Steptoe & Johnson, L.L.P., Washington, DC, for Ciba Specialty Chemicals Corp.

C. James Zeszutek, Denise D. Klug, Thorp, Reed & Armstrong, Pittsburgh, PA, for Ondeo Nalco Co.

Heather Heiskell Jones, Spilman, Thomas & Battle, Charleston, for Cytec Industries, Inc.

## PER CURIAM:

This proceeding involves appellants, Franklin Stump, Danny Gunnoe, and Teddy Joe Hoosier, along with others (hereinafter, the "Intervenors") who appeal the Circuit Court of Marshall County's January 15, 2004, denial of their motion to intervene in a class action (hereinafter, the "*Stern* litigation") for medical monitoring for asymptomatic coal preparation plant workers arising out of the alleged chemical exposure to an industrial water cleaner. Subsequent to the Intervenors' appeal to this Court, the class in which the Intervenors sought intervention was decertified by this Court's decision in *State ex rel. Chemtall, Inc. v. Madden*, 216 W.Va. 443, 607 S.E.2d 772 (2004). The Intervenors [1] are also the plaintiffs in a civil action currently pending in the Circuit Court of Boone County styled *Denver and Debra Pettry, et al., v. Peabody Holding Company, et al.*, Case No. 02–C–58 (hereinafter "the *Pettry* litigation"), wherein they are seeking medical monitoring relief against some of the same defendants in the *Stern* litigation.

During the consideration of this appeal, a petition for a writ of mandamus and/or prohibition styled *State ex rel. CIBA Speciality Chemical Corporation, et al. v. The Honorable E. Lee Schlaegel, Judge of the Circuit Court of Boone County, et al.* and assigned Case No. 042100 was filed in this Court by several of the defendants in the *Pettry* litigation. The petitioners therein sought to compel the Circuit Court of Boone County to transfer and consolidate the *Stern* litigation with the *Pettry* litigation pursuant to Rule 42(b) of the West Virginia Rules of Civil

Procedure.[2] While we had not issued a Rule to Show Cause in Case No. 042100, we allowed the parties to argue the consolidation issue during oral argument of the *Stern* appeal because of the interrelatedness of the two matters.

Based upon the parties' briefs and arguments in this proceeding as well as the pertinent authorities, the Circuit Court of Marshall County's January 15, 2004, order is reversed to the extent it is inconsistent with this opinion. Moreover, given our reversal of the Circuit Court of Marshall County's order in the *Stern* litigation, we find that the issues raised in the petition for an extraordinary writ filed by the *Pettry* defendants are moot. Accordingly, we decline to issue a Rule to Show Cause in that matter.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 5, 2003, appellee, William K. Stern, (hereinafter "Stern"), filed an action in the Circuit Court of Marshall County on behalf of a class of coal preparation plant workers against the suppliers of acrylamide, a chemical to which they were exposed (hereinafter the "*Stern* litigation"). Some of the suppliers of acrylamide specifically named in the *Stern* litigation include appellees, Ondeo Nalco Co. (hereinafter, "Ondeo"), CIBA Specialty Chemicals Corp. (hereinafter "CIBA"), Cytec Industries, Inc., Chemtall, Inc. (hereinafter, "Chemtall"), G.E. Betz, Inc., Zinkan Enterprises, and Stockhausen, Inc.

As previously noted, nearly one year earlier, on March 28, 2002, Intervenors Franklin Stump, Danny Gunnoe, along with several other individuals, filed a separate putative class action in the Circuit Court of Boone County on behalf of West Virginia coal treatment workers seeking medical monitoring re-

---

1. Hoosier sought to intervene on behalf of water treatment workers with similar medical monitoring claims based upon exposure to the same chemical at issue in *Stern*. At the time of this appeal, Hoosier was not a party to the *Pettry* litigation or any litigation arising out of the alleged exposure to any chemicals. Nonetheless, Hoosier maintains that while he is not a named member of the *Stern* class, he faces a similar risk of the same diseases and remains at an increased

risk for cancer and other diseases and will be prejudiced if intervention is denied.

2. The petition for writ of mandamus and/or prohibition in Case No. 042100 was filed in this Court after the Circuit Court of Boone County on June 17, 2004, denied a similar petition filed by the defendants to transfer and or consolidate the *Stern* litigation with the *Pettry* litigation.

lief against several of the same defendants as in the *Stern* case, based on the same exposure to acrylamide with the same resulting risk for the same diseases (hereinafter the "*Pettry* litigation"). The *Pettry* litigants, however, alleged numerous additional claims such as personal injury, loss of enjoyment of life, emotional distress, and annoyance and inconvenience, all of which were not asserted by the current litigants in the *Stern* litigation.

On September 26, 2003, the Circuit Court of Marshall County certified the *Stern* case as a class action, with a broadly defined class that included the Intervenors and the entire putative class from the *Pettry* case as well as coal preparation plant workers in West Virginia, Virginia, Illinois, Indiana, Pennsylvania, Ohio, and Tennessee. Following the class certification in *Stern*, on October 28, 2003, Intervenors Stump and Gunnoe moved to intervene on behalf of themselves and others similarly situated claiming that they had a right to intervene as class members whose interests were not adequately protected by the representative plaintiffs. In addition, Intervenor Hoosier moved to intervene on behalf of water treatment workers with similar medical monitoring claims based upon exposure to the same chemical to prevent the duplication of effort and potential inconsistent results that would necessarily occur following uncoordinated simultaneous prosecution of overlapping class actions.

On January 15, 2004, the Circuit Court of Marshall County denied the Intervenors' motion to intervene. The circuit court stated that under Rule 24(b) of the West Virginia Rules of Civil Procedure, the intervention sought was permissive and should not be allowed because such intervention would unduly delay the adjudication of the rights of the original parties. The circuit court also found with regard to Intervenor Hoosier and the water treatment workers, that they did not have a substantial interest in the *Stern* litigation.

On June 24, 2004, we granted the Intervenors' petition for appeal to this Court of the Circuit Court of Marshall County's January 15, 2004, denial of their motion to intervene. On December 2, 2004, this Court in *State ex rel. Chemtall, Inc. v. Madden*, 216 W.Va. 443, 607 S.E.2d 772 (2004), decertified the class in

*Stern* in which the Intervenors seek to participate. Moreover, following a separate action filed by several of the defendants involved in the *Pettry* litigation, on June 17, 2004, the Circuit Court of Boone County denied the defendants' motion to transfer and consolidate the *Stern* litigation with the *Pettry* litigation. On November 5, 2004, the *Pettry* defendants then filed in this Court the petition for a writ of mandamus and/or prohibition in Case No. 042100 seeking to compel the Circuit Court of Boone County to transfer and consolidate the *Stern* litigation with the *Pettry* litigation pursuant to Rule 42(b) of the West Virginia Rules of Civil Procedure.

The subject of the appeal before this Court is the January 15, 2004, denial of the Intervenors' motion to intervene by the Circuit Court of Marshall County. We are also called upon to consider the petition for a writ of mandamus and/or prohibition filed against the Circuit Court of Boone County in Case No. 042100.

## II.

### STANDARD OF REVIEW

■ As set forth above, the Intervenors are appealing an order of the Circuit Court of Marshall County denying their motion to intervene in the *Stern* litigation. In Syllabus Point 1 of *Coordinating Council for Independent Living, Inc. v. Palmer*, 209 W.Va. 274, 546 S.E.2d 454 (2001), we held that:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

■ Also, as discussed above, we have considered the issue raised in the petition for a writ of mandamus and/or prohibition filed by the *Pettry* defendants. Since the petition seeks to have this Court enter an order directing the circuit court to grant various

types of relief, we will treat it as a petition for a writ of mandamus seeking to compel the Circuit Court of Boone County to act accordingly. We have stated that a *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus. *McComas v. Board of Educ. of Fayette County,* 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996). This Court has also held that:

> A writ of mandamus will not issue unless three elements coexist-(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). *Accord,* Syllabus Point 5, *Phillip Leon M. v. Greenbrier County Board of Education,* 199 W.Va. 400, 484 S.E.2d 909 (1996), *modified in part, Cathe A. v. Doddridge County Bd. of Educ.,* 200 W.Va. 521, 490 S.E.2d 340 (1997); Syllabus Point 2, *State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 474 S.E.2d 906 (1996); Syllabus Point 1, *Hickman v. Epstein,* 192 W.Va. 42, 450 S.E.2d 406 (1994); Syllabus Point 1, *State ex rel. McGraw v. West Virginia Ethics Com'n,* 200 W.Va. 723, 490 S.E.2d 812 (1997). Thus, with these standards in mind, we consider the parties' arguments.

## III.

### DISCUSSION

The Intervenors argue that the Circuit Court of Marshall County failed to allow them to intervene as of right under Rule 24(a) of the West Virginia Rules of Civil Procedure. They argue that they have met the requirements as outlined by Syllabus Point 2 of *State ex rel. Ball v. Cummings,* 208 W.Va. 393, 540 S.E.2d 917 (1999), which provides:

> West Virginia Rule of Civil Procedure 24(a)(2) allows intervention of right in an action if an applicant meets four conditions: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the

applicant must show that the interest will not be adequately represented by existing parties.

The Intervenors contend that their motion was timely filed and that although courts have denied intervention following class certification, there is no requirement that a motion to intervene must precede certification. Moreover, the Intervenors state that their need to protect their interests through intervention did not arise in *Stern* until the class was certified with respect to the same claims that were being litigated in the *Pettry* litigation. The Intervenors further declare that their interest relates to the subject of the action and is substantial because each class member's right to medical monitoring is definable, protectable, and specific.

Additionally, the Intervenors point out that they will be bound by any judgment disposing of the *Stern* litigation unless it is determined upon collateral review that the representation was not adequate. The Intervenors also say that their interests will not be adequately represented by the existing *Stern* plaintiffs who have conceded that those who have suffered no manifest injury are not eligible to represent a class of persons who allegedly suffered injury. Thus, the Intervenors argue that the interests of class members such as Intervenor Stump are not adequately represented as Stump and those similarly situated, who have already sustained physical injury attributable to chemical exposure, are likely to warrant different treatment at the remedial stages of the litigation.

The Intervenors also argue that even if this Court determines that they do not have a right to intervene under W.Va.R.Civ.Pro. Rule 24(a), then they should be permitted to intervene under W.Va.R.Civ.Pro. Rule 24(b) which provides:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this State confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order adminis-

tered by a federal or State governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Intervenors contend that they have been parties to the *Pettry* action which was filed nearly one year prior to the *Stern* litigation, and that intervention is necessary to avoid duplicative litigation as both actions should be combined and managed by one court. The Intervenors say that almost every question raised by their claims is in common with the claims of the class in the *Stern* litigation. The Intervenors further argue that the objections by the *Stern* litigants are founded upon a misconception as to the nature of their proposed complaint. Thus, the Intervenors maintain that intervention will allow them to argue the same theories based upon the same facts and law to currently unrepresented or inadequately represented persons in the *Stern* litigation.

Conversely, Stern argues that the Intervenors do not satisfy the four requirements of intervention of right set forth in Rule 24(a). Initially, Stern says that Intervenors Stump and Gunnoe are symptomatic for certain injuries and seek individual damages from their exposure to 114 different chemicals, only one of which is the chemical involved in the *Stern* litigation. Moreover, Stern maintains that Intervenor Hoosier is not currently named as a plaintiff in any civil action regarding chemical exposure nor does he meet the class definition of the class formerly certified in *Stern*.[3] Additionally, Stern contends that the Intervenors have no "direct and substantial interest" in the *Stern* litigation as they have their own civil action in which they can seek damages including medical monitoring.

Stern declares that the disposition of the *Stern* litigation will neither impair nor impede Intervenor Stump or Gunnoe's ability to protect their interests as they have not demonstrated how they might be disadvantaged by the disposition in the *Stern* litigation. Stern further avers that even if the Intervenors could show that they would be disadvantaged, intervention should still be denied because the interests of the parties in the *Stern* litigation will be prejudiced by their intervention. Stern argues that the Intervenors are adequately represented by the *Pettry* litigation in Boone County.

Stern further asserts that the Intervenors are not entitled to permissive intervention because none of them can satisfy Rule 24(b) of the West Virginia Rules of Civil Procedure. Stern says that intervention would cause the scope of the *Stern* action to become broadened. Stern also contends that the intervention by Intervenor Hoosier would create a wholly new and unrelated action for water treatment workers, which will greatly expand the scope of the class of asymptomatic coal preparation plant workers formerly certified in the *Stern* litigation. According to Stern, such unwarranted expansion of the class would subject the parties in *Stern* to substantial prejudice as the *Stern* plaintiffs would have to determine how to prove liability for two sets of incongruous classes while simultaneously having to maintain the commonality and typicality required of class actions under Rule 23. Stern argues that the claims of Intervenor Hoosier involve a different industry, products, exposures, and defendants.

Additionally, Chemtall and Ondeo maintain that the fact that no class presently exists in the *Stern* action is not a technicality and that the Intervenors' motion to intervene has been rendered moot by this Court's decision to decertify the *Stern* class in *State ex rel. Chemtall, Inc. v. Madden*, 216 W.Va. 443, 607 S.E.2d 772 (2004). Chemtall also contends that transfer and consolidation with the *Pettry* action is not a viable alternative and no longer appropriate given the lapse of time. Chemtall argues that the *Pettry* litigation has remained effectively dormant for two years and eight months, while the *Stern* litigation has proceeded at astonishing speed with dozens of depositions taken, hundreds of requests for admissions and interrogatories an-

---

**3.** *See* footnote 1.

swered, and tens of thousands of documents produced.

Moreover, CIBA argues that transfer of the *Stern* litigation from the Circuit Court of Marshall County to the Circuit Court of Boone County under Rule 42(b) of the West Virginia Rules of Civil Procedure is the superior procedure over the intervention sought by the Intervenors.[4] W.Va.R.Civ.Pro. Rule 42(b) provides:

> When two or more actions arising out of the same transaction or occurrence are pending before different courts or before a court and a magistrate, the court in which the first such action was commenced shall order all the actions transferred to it or any other court in which any such action is pending. The court to which the actions are transferred may order a joint hearing or trial of any or all of the matters in issue in any of the actions; it may order all the actions consolidated; and it may make such other orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Whenever one of the actions is pending before a magistrate and a judgment is rendered by the magistrate for $15.00 or less, such judgment of the magistrate shall in no manner affect the other action pending in the court; the doctrine of res judicata shall not apply to such judgment, nor shall any such judgment of the magistrate be admissible in evidence in the trial of the other action pending in the court.

The *Stern* litigants, however, argue against transfer and consolidation of both actions stating that the *Stern* and *Pettry* actions are significantly different in both scope and intent. Stern maintains that *Pettry* involves a limited class of West Virginia residents seeking monetary damage awards for individual injuries from chemicals used in and around a limited number of coal preparation plants in West Virginia, while *Stern* involves a class of asymptomatic coal preparation plant workers who worked in all parts of West Virginia or one of six other states seeking injunctive relief for exposure to acrylamide.

■ The Intervenors did not state a position with regard to the petition for an extraordinary writ due to their pending appeal before this Court seeking intervention in *Stern.* They argue that if they are permitted to intervene in *Stern*, then the concerns of CIBA, Ondeo, and Cytec would be addressed rendering the petition for an extraordinary writ moot. We agree with the Intervenors that our decision today with regard to their appeal of the Circuit Court of Marshall County's denial of their motion to intervene in the *Stern* action renders the *Pettry* defendants' petition for an extraordinary writ moot and therefore, we deny to issue a Rule to Show Cause in that petition.

The issues and the parties involved in both the *Pettry* litigation and the *Stern* litigation are numerous. The *Pettry* litigation includes claims for personal injury, loss of enjoyment of life, emotional distress, and annoyance and inconvenience, while the litigants in both the *Pettry* and *Stern* actions seek medical monitoring. Moreover, we recognize that as of the time of this appeal, not every party involved in either the *Pettry* or the *Stern* litigation is a party to both actions; however, most of the parties are involved in both cases.

Additionally, as the *Stern* plaintiffs point out, there may be significantly different aspects to the actual remedies sought by the two different proposed class actions due to the fact that even though the actions are similar, they are not identical. Even so, we believe that the issues are similar enough that many of the same depositions, requests for admissions, interrogatories, and various other discovery requests will be identical in nature. We further recognize that the litigants in the *Stern* action are clearly not in the same place with regard to the completion of discovery as those in the *Pettry* litigation, who we were advised may be two years behind the *Stern* litigants with regard to discovery.

■ It is with these issues in mind that we believe we are called upon to exercise our inherent authority pursuant to the Constitu-

---

4. CIBA, Ondeo, and Cytec seek this relief through a petition for a writ of prohibition and/or mandamus which was filed in this Court on November 5, 2004, in Petition Case No. 042100.

tion of West Virginia to transfer the entire *Pettry* litigation to the Circuit Court of Marshall County for further disposition of both causes of action. We further order that the *Pettry* litigants be permitted to intervene in the *Stern* action pursuant to W.Va.R.Civ.Pro. 24(b)(2).

■ It is obvious to us that intervention should have been permitted due to the questions of law and fact in common between the parties. In Syllabus Point 3 of *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), we held:

> In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.

■ In this case, the common questions necessarily include: whether acrylamide is a proven hazardous substance; whether the defendants' conduct in supplying acrylamide-containing products was tortious; whether those exposed to acrylamide face an increased risk of contracting a serious latent disease; whether the increased risk makes monitoring reasonably necessary; and whether monitoring procedures are available. We recognized in *Ball*, 208 W.Va. at 403, 540 S.E.2d at 927, that: "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." (citations omitted). We believe that the circuit court abused its discretion by not permitting the *Pettry* litigants to intervene.

■ Moreover, our Constitution provides that "[g]eneral supervisory control over all intermediate appellate, circuit, and magistrate courts resides in the Supreme Court of Appeals. W.Va. Const., Art. VIII, § 3." [5] Syllabus Point 1, *Carter v. Taylor*, 180 W.Va. 570, 378 S.E.2d 291 (1989). *See also, Rogers v. Albert*, 208 W.Va. 473, 481, 541 S.E.2d 563, 571 (2000); *Gilman v. Choi*, 185 W.Va. 177, 406 S.E.2d 200 (1990); *State ex rel. Canterbury v. Paul*, 205 W.Va. 665, 672, 520 S.E.2d 662, 669 (1999); *State ex rel. Farley v. Spaulding*, 203 W.Va. 275, 299, 507 S.E.2d 376, 400 (1998). The purpose of this constitutional clause is to provide a unified court system and to centralize administrative authority in this Court. Thus, it is our task to supervise the administration of justice in the circuit courts to ensure that fair standards of procedure are maintained. To this end, we believe that it is imperative that both the *Pettry* and the *Stern* actions be handled by one judge in one circuit court.

■ Judicial supervision and responsibility "implies the duty of establishing and maintaining civilized standards of procedure and evidence." *McNabb v. United States*, 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943). *See, Dimon v. Mansy*, 198 W.Va. 40, 46, 479 S.E.2d 339, 345 (1996). We also recognize that " '[a] court "has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction." 14 Am. Juris., Courts, section 171.' Syllabus Point 3, *Shields v. Romine*, 122 W.Va. 639, 13 S.E.2d 16 (1940)." Syllabus Point 1, *State ex rel. Rees v. Hatcher*, 214 W.Va. 746, 591 S.E.2d 304 (2003). While the underlying issues in *Romine* and *Hatcher* dealt with the exercise of authority within a circuit court, the principle necessarily applies to this Court as the inherent power of the judiciary has been well recognized in this jurisdiction. *See e.g., Virginia Electric & Power Co. v. Haden*, 157 W.Va. 298, 306, 200 S.E.2d 848, 853 (1973); Syllabus Point 2, *Frazee Lumber Co. v. Haden*, 156 W.Va. 844, 197 S.E.2d 634 (1973).

Moreover, in *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 251–252, 332 S.E.2d 262, 264–265 (1985), we explained that such inherent power has been recognized in a

---

**5.** The Reorganization Amendment rewrote Article VIII, substituting Secs. 1 to 15 for former Secs. 1 to 30, amended Sec. 13 of Article III, and added Secs. 9 to 13 to Article IX.

**338**

variety of contexts at both the appellate and trial court levels including:

> *In re Pauley,* 173 W.Va. 228, 314 S.E.2d 391, 396 (1984) [1983] (provision and supervision of court personnel); Syl. pt. 4, *Prager v. Meckling,* 172 W.Va. 785, 310 S.E.2d 852 (1983) (imposition of sanctions to maintain a fair and orderly trial); *In re L.E.C.,* 171 W.Va. 670, 301 S.E.2d 627, 630 (1983) (supervision, regulation, definition, and control of the practice of law); *Perlick & Co. v. Lakeview Creditor's Trustee Committee,* 171 W.Va. 195, 298 S.E.2d 228, 235 (1982) (elimination of dormant cases from judicial dockets); *E.H. v. Matin,* 168 W.Va. 248, 284 S.E.2d 232 (1981) (transfer of actions to lower tribunals for further proceedings); *State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545, 556 n. 3 (1981) (compulsion of attendance by witnesses); *Sparks v. Sparks,* 165 W.Va. 484, 269 S.E.2d 847, 848 (1980) (grant of custody of a child to a person outside jurisdiction of court or permission to one who has custody to take child to another state or foreign jurisdiction); *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90, 96–97 (1980) (imposition of civil contempt sanctions); *State ex rel. Goodwin v. Cook,* 162 W.Va. 161, 171–72, 248 S.E.2d 602, 607–08 (1978) (appointment of special prosecutor); Syl. pt. 3, *State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 246 S.E.2d 99 (1978) (determination of funding necessary for the effective operation of the judiciary); *State ex rel. Moran v. Ziegler,* 161 W.Va. 609, 614, 244 S.E.2d 550, 553 (1978) (disqualification of private prosecutor); *Eastern Associated Coal Corp. v. Doe,* 159 W.Va. 200, 208, 220 S.E.2d 672, 678 (1975) (enforcement of judicial orders); *Corbin v. Corbin,* 157 W.Va. 967, 980, 206 S.E.2d 898, 906 (1974) (modification of divorce decrees); *Virginia Electric & Power Co. v. Haden,* 157 W.Va. at 306, 200 S.E.2d at 853 (transfer of actions to administrative agencies for further proceedings); *State v. Cowan,* 156 W.Va. 827, 834, 197 S.E.2d 641, 645 (1973) (direction of pretrial discovery); *Maxwell v. Stalnaker,* 142 W.Va. 555, 563, 96 S.E.2d 907, 912 (1957) (adjudication of payment of costs); *State ex rel. Chemical Tank Lines, Inc. v. Davis,* 141 W.Va. 488, 493, 93 S.E.2d 28, 31 (1956) (prescription and enforcement of

rules and regulations for the conduct of judicial business).

In *Mansy,* we also wrote:

> Of course, our supervisory and rulemaking authority is not a form of free-floating justice, untethered to legal principle. Attempts by an appellate court, for example, to use broad supervisory and rulemaking authority as a way to control the properly vested discretion of the trial court should be squarely rejected. But, on occasion, and we think this is one, we must act to secure rights and fairness when we are persuaded a procedure followed in a trial court is wrong.

*Id.* at 46, 479 S.E.2d at 345. We also explained in *Mansy* that "we may require lower courts to adhere to procedures deemed desirable as a matter of sound judicial practice even though the procedures may not be directed either by statute or the Constitution." *Id.* at 50, 479 S.E.2d at 349 (1996). *See also, In Interest of Tiffany Marie S.,* 196 W.Va. 223 n. 17, 470 S.E.2d 177 n. 17 (1996) (stating that: "Under our supervisory authority over circuit courts, we may require the courts to follow procedures deemed desirable from the viewpoint of sound judicial policy and practice although they are not specifically commanded by the Constitution or the Legislature.").

Consequently, we believe that it is in the best interest of all of the parties and in the interest of the administration of justice that these cases be tried in the same circuit court in front of the same circuit judge. Accordingly, we instruct the Circuit Court of Boone County to immediately transfer the *Pettry* case to the Circuit Court of Marshall County. In doing so, however, we are not ordering that the cases be consolidated. Instead, we specifically order that intervention be granted to the *Pettry* litigants. We leave any additional concerns of the parties to the Circuit Court of Marshall County to reconsider in light of this decision as we believe that the circuit court is in a better position to manage this litigation and to protect the interests of both the *Pettry* and *Stern* litigants. The circuit judge should manage the cases and the issues herein as he deems appropriate.

Litigating these cases in one circuit court in front of the same judge will help to ensure that none of the parties is prejudiced by the potential of duplication of efforts and possible inconsistent results. Of course, the circuit judge may in his discretion after consideration of all appropriate factors consolidate these cases or try them separately. We believe that allowing one circuit judge to handle both cases will alleviate the concerns that some interests of potential class members are not adequately protected by the current representative plaintiffs and will help to prevent any unnecessary expenses or the possibility of adverse decisions that could occur in separate circuit courts.

We also note that our decision to send the *Pettry* litigation to the Circuit Court of Marshall County should not be construed as a determination that we believe one circuit judge is more qualified to handle these cases than another circuit judge. We made the determination to send the *Pettry* litigation to the Circuit Court of Marshall County based solely upon the fact that the *Stern* litigation is much further along with discovery and therefore, the Circuit Court of Marshall County should necessarily be more familiar with the litigants and the surrounding issues.

## IV.

### CONCLUSION

Based upon the foregoing, we hereby reverse the Circuit Court of Marshall County's January 15, 2004, denial of the Intervenors' motion to intervene in the *Stern* class action for medical monitoring, and remand the matter to the Circuit Court of Marshall County for the immediate entry of an order as provided herein and for further proceedings consistent with this opinion. We further order that leave to intervene be granted to the *Pettry* litigants and that the *Pettry* litigation be transferred from the Circuit Court of Boone County to the Circuit Court of Marshall County and assigned to Judge John T. Madden for further disposition consistent with this opinion. In addition, we refuse to issue a Rule to Show Cause in Case No. 042100 as we find the issues therein to be fully disposed of by our decision with regard to the Intervenors' direct appeal.

Reversed and remanded with directions.

Chief Justice ALBRIGHT and Justice STARCHER concur and file concurring opinions.

Justice DAVIS and Justice BENJAMIN deeming themselves disqualified, did not participate in the decision of this case.

Judge PRATT and Judge WILSON sitting by temporary assignment.

ALBRIGHT, Chief Justice, concurring:

(Filed July 6, 2005)

I concur in the result reached by the majority opinion. I write separately only to state that while I did not have the opportunity to participate in this Court's original determination regarding the medical monitoring issue in *Bower v. Westinghouse Electric Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999), I do not believe that medical monitoring should be regarded as a separate, independent *cause of action.* Rather, it should be utilized as a potential *remedy* available to an injured individual.

The Supreme Court of Nevada recently struggled with the question of whether common law recognizes medical monitoring as a separate cause of action or simply a remedy and concluded that Nevada common law recognizes medical monitoring as a remedy. *Badillo v. American Brands, Inc.*, 117 Nev. 34, 16 P.3d 435 (2001). The court reasoned that "[w]hen recognized as a remedy, medical monitoring is usually tied to a cause of action in trespass, nuisance, strict liability, or negligence." 16 P.3d at 440 (citations omitted).

> In the tobacco litigation context, we note that claims for medical monitoring relief have been tied to causes of action in torts and contracts, including fraud, failure to warn, misrepresentation, strict liability, deceptive trade practices, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, conspiracy, intentional infliction of emotional distress, intentional exposure to a hazardous substance, and violation of consumer protection statutes.

*Id.* (citations omitted).

As Justice Starcher clearly expressed in his concurrence to *Carter v. Monsanto Co.,*

**340**

212 W.Va. 732, 575 S.E.2d 342 (2002), "property monitoring (like medical monitoring, under my understanding) is not—repeat, IS NOT—a separate cause of action. In my view, monitoring and the cost thereof are simply a remedy or an element of damages that are available to a court to award or order against a culpable party." 212 W.Va. at 738, 575 S.E.2d at 348 (Starcher, concurring). I believe that the standards articulated by this Court in *Bower* provide sound guidelines informing the courts of the parameters of the remedy of medical monitoring, but characterizing the medical monitoring remedy as a separate, independent cause of action is a misnomer.

STARCHER, J., concurring.

(Filed July 14, 2005)

In *State ex rel. Chemtall Inc. v. Madden*, 216 W.Va. 443, 457, 607 S.E.2d 772, 786 (2004), I wrote separately and said that "I do not envy the circuit judge's position in the instant case." Again, in this case, we have dumped an additional pile of medical monitoring cases into the circuit judge's lap. These new cases share some of the same issues and defendants with the original *Stern* group of plaintiffs, but also have new issues and defendants, and much discovery remains to be done on these new cases. Now I can say I *really* do not envy the circuit judge's position.

The circuit judge, however, should not be daunted by the decision to permit these new cases to be drawn into his courtroom. The record reveals that the circuit judge worked ably with counsel for the prior class of plaintiffs, the *Stern* group, and counsel for the defendants to competently and vigorously prepare the cases for trial. I see nothing to suggest that the addition of these new plaintiffs and defendants should alter that chemistry. The majority's opinion expressly recognized that a court has the "inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction."

On remand, the circuit judge should exercise that authority to refine the issues in this oversized gargantuan of a lawsuit, and put this case back on track to a prompt, fair and inexpensive conclusion.