IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0247

_____

**FILED**
**April 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: G.S.

_____

Appeal from the Circuit Court of Wetzel County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 2020-JA-001

REVERSED AND REMANDED

_____

Submitted: January 27, 2021
Filed: April 2, 2021

Kelly A. Stepp, Esq.
Stepp Law Offices
Waynesburg, Pennsylvania
Counsel for Petitioners

David C. White, Esq.
Law Office of Neiswonger and White
Moundsville, West Virginia
Guardian Ad Litem

Patrick Morrisey, Esq.
Attorney General
Mindy M. Parsley, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent Department of
Health and Human Resources

R. Jared Lowe, Esq.
Assistant Public Defender
Moundsville, West Virginia

JUSTICE ARMSTEAD delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.    "'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard.  We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*'  Syl. Pt. 1, in part, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005)."  Syl. Pt. 1, *In re P.F.*, 243 W. Va. 569, 848 S.E.2d 826 (2020).

2.    When a writing signed by both parents purports to transfer custody of a child to a third person, and that child later becomes the subject of an abuse and neglect petition against the child's parents, the person with purported custody of the child has a right to be heard at the preliminary phase of the proceedings to determine: (a) whether the writing is authentic, (b) whether he or she is a responsible person for purposes of West Virginia Code § 49-4-602 (2015), and (c) whether temporary placement with such person is in the child's best interest.

**Armstead, Justice:**

Petitioners are the paternal grandparents of an infant, G.S. Soon after G.S. was born, Petitioners filed a petition for guardianship in the Circuit Court of Wetzel County. In support of their petition, Petitioners filed written agreements—signed by both parents—that purported to transfer custody of the newborn to Petitioners. Days later, the Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition against the parents. When Petitioners promptly moved to intervene, the circuit court denied their motion and, despite the written agreements of record purporting to convey custody of G.S. to Petitioners, held no evidentiary hearing to consider them for temporary placement. The child remains in foster care, and Petitioners filed this appeal.

After careful review, we hold that Petitioners had a right to a timely evidentiary hearing to determine their suitability for temporary placement in light of the written agreements of record that purported to convey custody of the child to Petitioners. Accordingly, we reverse the circuit court's order and remand this case for an expedited hearing in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners, K.S.[1] and A.S., are the paternal grandparents of an infant girl, G.S., who was born in January 2020, both premature and severely exposed to addictive

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

drugs. Though G.S. was born at home, she was soon hospitalized. She remained in the hospital for twenty-one days. Nine days later, she was hospitalized again, this time for eleven days.

Petitioners represent that they were preparing to seek guardianship before G.S. was born. When G.S. was two days old, they filed a petition for guardianship in the Circuit Court of Wetzel County. In support of their petition, they filed "guardianship" agreements that were signed by both parents. The agreements, which were acknowledged before a notary on the day after the child was born, recited that the child's "welfare and best interests" would be promoted if she lived in Petitioners' home under their "care, custody, and control[.]" Each agreement purported to appoint Petitioners as guardians of G.S. and authorized them to make educational and medical decisions, and was to remain in effect until a parent "files and is granted an order terminating guardianship and restoring parental rights or until otherwise ordered by the [c]ourt." The agreements further provided that the child was to "reside in the home of the [Petitioners] and . . . be treated the same as . . . [Petitioners'] natural child."

Meanwhile, on the same day Petitioners filed the petition for guardianship, DHHR filed an application for emergency custody of G.S., which was granted by the

magistrate court.[2]  Five days after DHHR applied for emergency custody,[3] DHHR filed an abuse and neglect petition against the parents in circuit court.  The petition accused G.S.'s mother of using controlled substances during pregnancy and G.S.'s father of knowingly allowing this to occur.  The abuse and neglect petition also acknowledged that Petitioners had filed a guardianship petition.  The circuit court entered an initial order on the abuse and neglect petition and scheduled a preliminary hearing for February 4, 2020.

The circuit court, however, dismissed Petitioners' guardianship petition.[4] Three days later, Petitioners moved to intervene in the abuse and neglect matter and be

---

[2] *See* W. Va. Code § 49-4-303 (2015) (authorizing emergency removal by DHHR and ratification of emergency custody by magistrate court order).

[3] Because a weekend and a legal holiday intervened, only two judicial days passed between the time DHHR applied for ratification of emergency custody and the time DHHR filed the abuse and neglect petition.  *See* W. Va. R. P. Child Abuse & Neglect Proc. 7 [2012]; W. Va. R. Civ. P. 6(a) [1998].

[4] According to Petitioners, the dismissal was "without hearing *sua sponte* due to the filing of the . . . abuse and neglect petition."  The circuit court's dismissal order does not identify the circuit court's statutory or other authority to summarily dismiss Petitioners' guardianship petition.  The order simply states that the court is "aware" of another pending civil action that "takes precedence and supplants" the minor guardianship proceeding.  We agree that abuse and neglect proceedings take priority over almost every other civil action before a circuit court.  W. Va. Code § 49-4-601(j) (2019) ("Any petition filed and any proceeding held under this article shall, to the extent practicable, be given priority over any other civil action before the court, except proceedings under § 48-27-309 of this code [regarding domestic violence proceedings] and actions in which trial is in progress."); *see also* W. Va. R. P. Child Abuse & Neglect Proc. 5 [2015] ("Under no circumstances shall a civil child abuse and neglect proceeding be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings.").  However, we are aware of no authority that requires or allows a circuit court to *dismiss* a duly filed guardianship petition *sua sponte* simply because another party has filed a subsequent abuse and neglect petition regarding the same child.

named as co-petitioners[5] with DHHR.  Petitioners' motion reminded the court that they had petitioned for guardianship and advised that, since the child's birth, they had "visited the child in the hospital" and had "been fully involved in her care and well-being[.]" According to Petitioners, DHHR had represented to Petitioner grandmother that Petitioners would be considered for placement and had visited their home.  Petitioners affirmed that they wished to care for G.S. and were able to do so.

On February 4, 2020, Petitioners appeared for a hearing on their motion to intervene and be named as co-petitioners.  The hearing on Petitioners' motion was set for the same date and time as the preliminary hearing.  However, the circuit court soon removed them from the courtroom,[6] leaving their attorney to argue in their absence.  The assistant prosecuting attorney reported that G.S. remained in the hospital and that DHHR intended—barring a contrary order from the court—to place G.S. in foster care with her half-siblings, who had been the subject of a prior adoption.[7]  When Petitioners' attorney argued that the half-siblings had no bond with G.S., the circuit court reminded Petitioners' attorney that it was considering the motion to intervene, "not placement at the moment." Petitioners' attorney responded, however, that Petitioners wished to intervene "so that they

---

[5] *See* W. Va. R. P. Child Abuse & Neglect Proc. 17(a) [2016] (authorizing a motion to join "[DHHR], a parent, or reputable person . . . as a co-petitioner after the filing of the initial petition.").

[6] The circuit judge stated that he was having Petitioners "step out at the moment until I address the Motion to Intervene[,]" but Petitioners were not invited back into the courtroom.

[7] These half-siblings have the same biological mother as G.S.

can be part of the process in whatever is decided for the infant at the end of the day" and that they wanted G.S. placed with them when she was discharged from the hospital. Petitioners' attorney also noted that DHHR was seeking a decision about sibling separation and contended that placement with Petitioners was in the child's best interest, given the possibility that Petitioners' son, the child's father, might regain custody. After further colloquy, the circuit court took the matter under advisement and excused Petitioners' attorney from the courtroom.

The circuit court denied Petitioners' motion in an order entered on February 13, 2020, finding that Petitioners did "not meet the statutory definition as persons entitled to notice of hearings as a parent or relative providing care for th[e] child" and that Petitioners "did not cite specific allegations of abusive or neglectful conduct by the parents" but, rather, had sought guardianship. Nevertheless, the circuit court found that Petitioners' "home should be considered as a potential foster placement" and ordered DHHR to "conduct an appropriate home study and other assessment to consider the paternal grandparents as placement for the child in the Department's custody."

On March 16, 2020, Petitioners filed a notice of appeal from the circuit court's February 13, 2020 order. Before oral argument before this Court, Petitioners and DHHR filed updates regarding the child's status.[8] DHHR's update advised that DHHR

---

[8] The West Virginia Rules of Appellate Procedure require parties to "provide a written statement of any change in the circumstances that were set forth in the briefs within one week of any oral argument scheduled by the Court or within such other time as may be specified by order." W. Va. R. App. P. 11(j) [2016].

intended to seek the termination of the father's parental rights. Petitioners' update reported that the mother relinquished her parental rights in June 2020. Petitioners further advised that they renewed their motion to intervene in November 2020 and that the circuit court had since granted that motion. However, Petitioners also reported that DHHR continued to deny them visitation with the child and that the circuit court had "deferred the issue of placement" despite DHHR issuing a favorable kinship/relative safety screen with regard to Petitioners in April 2020.

## II. STANDARD OF REVIEW

This appeal stems from Petitioners' attempt to participate in an ongoing abuse and neglect proceeding filed against the child's parents. Petitioners are properly before us, however, because an order denying a motion to intervene in an abuse and neglect matter is a final appealable order with respect to the moving party. *See In re P.F.*, 243 W. Va. 569, ___ n.4, 848 S.E.2d 826, 830 n.4 (2020) (rejecting a claim that the Court lacked jurisdiction to review an order denying a grandparent's motion to intervene in an abuse and neglect matter); *see also Bhd. of R.R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 524 (1947) ("[W]here a statute or the practical necessities grant the applicant an absolute right to intervene, the order denying intervention becomes appealable.").

> "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 1, in part, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005).

6

*In re P.F.*, 243 W. Va. at \_\_\_, 848 S.E.2d at 827, syl. pt. 1.  On review, we also consider whether the circuit court's action "substantially disregarded or frustrated" procedures contained in our rules and the relevant statutes.  *In re J.A.*, 242 W. Va. 226, 238, 833 S.E.2d 487, 499 (2019) (quoting Syl. Pt. 5, *In re T.W.*, 230 W.Va. 172, 737 S.E.2d 69 (2012)).  We have a constitutional duty to "supervise the administration of justice in the circuit courts to ensure that fair standards of procedure are maintained."  *Stern v. Chemtall Inc.*, 217 W. Va. 329, 337, 617 S.E.2d 876, 884 (2005) (citing W. Va. Const. art. VIII, § 3).  This supervisory duty carries with it the "inherent power to do all things that are reasonably necessary for the administration of justice within the scope of [our] jurisdiction."  *Id*. (quoting Syl. Pt. 1, *State ex rel. Rees v. Hatcher,* 214 W.Va. 746, 591 S.E.2d 304 (2003)).  With these principles in mind, we will consider Petitioners' assignments of error.

### III.  ANALYSIS

Petitioners raise four assignments of error.  Petitioners contend that the circuit court erred by: (1) denying their motion to intervene, (2) denying their right to be heard, (3) failing to place the child with them, and (4) denying their motion to be joined as co-petitioners with DHHR.  However, the circuit court has since granted Petitioners' renewed motion to intervene, and, as intervenors, Petitioners now enjoy the right to be heard and participate in the proceedings below.  While the circuit court's order does not explain why the court granted Petitioners' renewed motion to intervene, the order simply observes that a "substantial change of material facts both procedurally and substantively" has occurred.  "By the very definition of intervention the intervenor is a party to the action.

7

After intervention, he or she is as much a party to the action as the original parties, and renders himself vulnerable to complete adjudication of the issues in litigation between himself and the adverse party." *In re Harley C.*, 203 W. Va. 594, 598, 509 S.E.2d 875, 879 (1998) (quoting 59 Am.Jur.2d *Parties* § 170 (1987)). Thus, Petitioners already have the relief they sought under their first two assignments of error.

We now address petitioners' argument that the circuit court "abused its discretion by refusing to order placement with the paternal grandparents over half-siblings." They contend that, by failing to place the child with them "sooner rather than later, . . . the circuit court effectively prejudiced the paternal grandparents' preference for permanent placement."

Petitioners invoke the statutory grandparent preference contained in West Virginia Code § 49-4-114(a)(3) (2015).[9] We have held that this provision creates a "grandparent preference in determining *adoptive* placement for a child *where parental*

---

[9] West Virginia Code § 49-4-114(a)(3) provides that

[f]or purposes of any placement of a child for adoption by the department, the department shall first consider the suitability and willingness of any known grandparent or grandparents to adopt the child. Once grandparents who are interested in adopting the child have been identified, the department shall conduct a home study evaluation, including home visits and individual interviews by a licensed social worker. If the department determines, based on the home study evaluation, that the grandparents would be suitable adoptive parents, it shall assure that the grandparents are offered the placement of the child prior to the consideration of any other prospective adoptive parents.

*rights have been terminated* and . . . incorporates a best interests analysis within that determination by including the requirement that the DHHR find that the grandparents would be suitable adoptive parents prior to granting custody to the grandparents." *In re P.F.*, 243 W. Va. at ___, 848 S.E.2d at 827, syl. pt. 7, in part (emphasis added) (quoting Syl. Pt. 4, in part, *Napoleon S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005)). Though West Virginia Code § 49-4-114(a) contemplates a circumstance where parents' rights have been terminated, Petitioners contend that nothing in that provision "precludes" temporary placement with grandparents before termination.

However, the circuit court rendered no decision, found no facts, and reached no conclusions of law regarding Petitioners' suitability for temporary placement or whether such placement would be in the child's best interest. Indeed, despite the written guardianship agreements purporting to transfer custody of G.S. to Petitioners,[10] the circuit court did not allow Petitioners to participate in the preliminary hearing to determine whether G.S. should be placed in the custody of Petitioners.

We are deeply troubled by the circuit court's failure to develop the record and expeditiously render a decision on this issue at the February 4, 2020 preliminary hearing. In its February 13, 2020 order denying Petitioners' motion to intervene, the circuit court merely found that Petitioners' home "should be considered" for potential foster placement and directed DHHR to conduct a home study and whatever other assessments

---

[10] We presume that the circuit court was aware of the guardianship agreements, because the judge who denied Petitioners' motion to intervene also dismissed the guardianship petition.

might be necessary for that purpose. DHHR issued a favorable kinship/relative safety screen in April 2020, yet no subsequent hearing was held to consider DHHR's findings or receive testimony, and no decision was made regarding Petitioners' suitability to care for their granddaughter. Ten months later, when the circuit court granted Petitioners' motion to intervene, the court "expressly" deferred making a decision regarding placement "until such time as those entitled to notice and an opportunity to be heard may make their positions known to the [c]ourt."

Such delay was inappropriate on the facts of this case. When Petitioners filed their guardianship petition, they attached notarized agreements from *both* parents that purported to transfer temporary custody of G.S. to Petitioners. When a circuit court enters its initial order regarding custody, West Virginia Code § 49-4-602 commands the circuit court to "require the immediate transfer of care, custody, and control of the child or children to the department *or a responsible relative*, which may include any parent, guardian, or other custodian." W. Va. Code § 49-4-602(a)(4) (emphasis added). West Virginia Code § 49-4-602 also authorizes a circuit court, after a preliminary hearing, to deliver the child "into the temporary care, custody, and control of the department *or a responsible person* or agency found by the court to be a fit and proper person[.]" W. Va. Code § 49-4-602(b) (emphasis added).

We believe that circuit courts have the authority to award temporary custody to a "responsible person" because there are at least some circumstances where awarding temporary custody of an abused or neglected child to someone *other than DHHR* is in the

10

child's best interest—which is our "paramount" concern. *In re P.F.*, 243 W. Va. at ___, 848 S.E.2d at 827, syl. pt. 3 (" 'In . . . custody matters, we have traditionally held paramount the best interests of the child.' Syl. Pt. 5, in part, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).").

Accordingly, we hold that, when a writing signed by both parents purports to transfer custody of a child to a third person, and that child later becomes the subject of an abuse and neglect petition against the child's parents, the person with purported custody of the child has a right to be heard at the preliminary phase of the proceedings to determine: (a) whether the writing is authentic, (b) whether he or she is a responsible person for purposes of West Virginia Code § 49-4-602 (2015), and (c) whether temporary placement with such person is in the child's best interest.

Because we find, based on the specific facts and circumstances of this case, that Petitioners had a right to be heard at the preliminary hearing to determine their suitability for temporary placement, we reverse the circuit court's February 13, 2020 order and remand this case to the circuit court for an expedited evidentiary hearing to make such determination of their suitability for temporary placement in accordance with this opinion. We emphasize that we are remanding this case for an *expedited* hearing, particularly in light of the child's tender age. As this Court has previously observed, "[u]njustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, in part, *In Int. of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

11

We also remind the circuit court that any transition from the foster parents' care to Petitioners' care—if warranted—may be undertaken gradually. *Kristopher O. v. Mazzone*, 227 W. Va. 184, 191, 706 S.E.2d 381, 388 (2011) ("Should the circuit court determine that any further change of physical and legal custody is required, it must be accomplished via a gradual transition."). Any such transition must also occur under the circuit court's careful supervision. Syl. Pt. 7, *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000) ("When a circuit court determines that a gradual change in permanent custodians is necessary, the circuit court may not delegate to a private institution its duty to develop and monitor any plan for the gradual transition of custody of the child(ren).").

To facilitate the commencement and conclusion of the proceedings directed by this opinion, we further direct the Clerk to issue the mandate of the Court contemporaneously with the issuance of this opinion. [11]

## IV. CONCLUSION

Based on the foregoing, we reverse the circuit court's February 13, 2020 order, and we remand this case to the Circuit Court of Wetzel County for further action in accordance with this opinion.

Reversed and Remanded,

with Directions.

---

[11] Because the circuit court has already granted Petitioners' motion to intervene and we have directed that an evidentiary hearing be held on Petitioners' request for temporary placement, it is not necessary for Petitioners to be granted the status of co-petitioners.